**Marlane C. PAGAN, Appellant,**

v.

**Otis R. BOWEN, Secretary, Health and Human Services, Appellee.**

**No. 87–5368.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 20, 1988.

Decided Nov. 29, 1988.

As Amended Jan. 17, 1989.

Michael Tankersley, for appellant. Mary Ellen O'Connell, Washington, D.C., also entered an appearance for appellant.

Susan A. Nellor, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee. Michael J. Ryan, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before WALD, Chief Judge, and MIKVA and SENTELLE, Circuit Judges.

Opinion for the court filed by Chief Judge WALD.

WALD, Chief Judge:

Appellant, Marlane Pagan, appeals from a decision of the district court, affirming the Secretary of Health and Human Services' denial of Appellant's application for Supplemental Security Income benefits under Title XVI of the Social Security Act.[1] Ms. Pagan suffers from chronic schizophrenia, and in the past 15 years she has undergone four episodes of severe psychotic behavior, each time requiring hospitalization. She has not worked since 1973. The Secretary ruled that Ms. Pagan was not entitled to benefits because none of her acute psychotic episodes lasted as long as 12 months, and because her symptoms were greatly abated in the periods between her episodes. We hold that, under the Secretary's own regulations, a claimant can establish eligibility even if no single psychotic episode persists for 12 months. We hold, further, that the regulations forbid the Secretary to impose an inflexible standard requiring claimants to have suffered significant symptoms, such as hallucinations and delusions, between episodes. Consequently, we reverse the district court and remand the case for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. *Statute and Regulations*

#### 1. The SSI Disability Scheme

The Supplemental Security Income ("SSI") program provides for the payment of benefits to indigent "disabled individual[s]." 42 U.S.C. § 1382c(a)(1). An individual is considered "disabled" under the statute if he or she is—

> unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months....

1. *Pagan v. Bowen,* No. 84–2449 (D.D.C. Aug. 19, 1987) [1987 WL 16551].  16551].

42 U.S.C. § 1382c(a)(3)(A). The Act further provides that an individual shall be considered disabled only if—

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy....

42 U.S.C. § 1382c(a)(3)(B).

The Secretary has promulgated regulations that establish a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920. *See Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 2290–91, 96 L.Ed. 2d 119 (1987) (describing the process). Step one determines whether the claimant is engaged in "substantial gainful activity." If so, the application for benefits is denied. 20 C.F.R. § 416.920(b). If not, the decision-maker proceeds to step two, which requires a determination whether the claimant has a severe physical or mental impairment. *Id.* § 416.920(c). If the claimant does not have a severe impairment, then benefits are denied. If the impairment is severe, the evaluation proceeds to the third step, which determines whether the impairment is equivalent to one of the listed impairments that are deemed so severe as to preclude substantial gainful activity. *Id.* § 416.920(d). The listed impairments are set out in Appendix 1 of Subpart P, 20 C.F.R. Part 404 (the "Listing of Impairments"). If the claimant's condition meets the criteria of a listed impairment, she is conclusively presumed to be disabled and is therefore entitled to benefits without any further inquiry. If the claimant's condition falls short of a listed impairment, the evaluation proceeds to the fourth step, which determines whether her condition prevents the claimant from performing the work she has performed in the past. *Id.* § 416.920(e). If the claimant is able to perform the previous work, she is not disabled. If the claimant cannot perform this work, the fifth and final step determines whether she is able to perform other work in the national economy, considering her age, education and work experience. § 416.920(f). If the claimant is not able to perform alternative work, then she is entitled to disability benefits.

An initial determination of the Social Security Administration denying a claim for SSI benefits is subject to a three-stage administrative review process. *Bowen v. Yuckert,* 107 S.Ct. at 2291. First, the determination is reconsidered by the Social Security Administration. 20 C.F.R. § 416.1407. Second, the claimant is entitled to a hearing before an administrative law judge (ALJ). *Id.* § 416.1429. Third, the claimant may seek review by the Appeals Council. *Id.* § 416.1467. Once this administrative review process has been exhausted, the claimant may seek review in federal district court. *Bowen v. Yuckert,* 107 S.Ct. at 2291; 42 U.S.C. § 1383(c)(3). The court must accept as conclusive the factual determinations of the Secretary if they are supported by substantial evidence. 42 U.S.C. §§ 1383(c)(3), 405(g).

### 2. The 1985 Regulations on Mental Illness

The Secretary's treatment of mental illness under the SSI program generated much criticism in the early 1980s. *Poulin v. Bowen,* 817 F.2d 865, 875 (D.C.Cir.1987). On investigation, Congress found the old system for granting or denying benefits to mentally ill persons to be unduly restrictive. A House Report stated: "While the validity of all [the] criticisms may be subject to some debate, it is clear that in many cases individuals have been improperly denied benefits." H.R.Rep. No. 618, 98th Cong., 2d Sess. 15 (1984), U.S.Code Cong. & Admin.News 1984, pp. 3038, 3052. As a result of its inquiries, Congress specifically amended the Social Security Act in 1984 to require the Secretary to revise the criteria for assessing mental disorders in the third step of the disability analysis. The statute told the Secretary to amend the Listing of Impairments so that the criteria would "realistically evaluate the ability of a mentally impaired individual to engage in substantial gainful activity in a competitive workplace environment." Social Security Disability

Benefits Reform Act of 1984, Pub.L. No. 98–460, § 5(a), 98 Stat. 1794, 1801 (codified at 42 U.S.C. § 421) [hereinafter "Reform Act"].

The Secretary responded by promulgating amendments to the mental health portion of the Listing of Impairments (the "Revised Listings"),[2] designed to reflect current understanding of the nature and symptoms of mental illness. Revised Listings, 50 Fed.Reg. at 35,038. The Secretary noted that a key revision concerned the evaluation of impairments caused by schizophrenia.

> One of the major changes is in Listing 12.03 where language has been added to ensure that the chronic schizophrenic individual who may have his or her symptoms attenuated by treatment but who still cannot work because of more subtle manifestations of his or her disorder will now meet the severity of the revised listing. This had been the major area of criticism and a principal area of deficiency in the former regulations.

*Id.*, 50 Fed.Reg. at 35,038. In short, the Secretary acknowledged that the prognosis of chronic schizophrenia may well include periods between acute bouts in which symptoms, while controlled enough to permit life outside an institution, still prevent the patient from pursuing normal employment. *See Poulin v. Bowen,* 817 F.2d at 875.

The Revised Listings indicate how a claimant such as Ms. Pagan can establish that her schizophrenia is severe enough to constitute a listed impairment, conclusively entitling her to benefits. The schizophrenia listing, § 12.03, divides the criteria into three parts, labeled A, B and C. 20 C.F.R., pt. 404, subpt. P, app. 1, § 12.03 [hereinafter "Listing of Impairments § 12.03"]. There are two ways to establish listed impairment status. First, the claimant can show the existence of certain symptoms associated with schizophrenia (the paragraph "A" criteria),[3] plus the existence of two or more functional impairments at a stated level of severity (the paragraph "B" criteria).[4] *Id.* § 12.03 A, B. Alternatively, the claimant can prevail by satisfying the paragraph "C" criteria. This entails showing that she at one time in the past satisfied the criteria of paragraphs "A" and "B," that her symptoms are currently attenuated by treatment, and that she has either a history of repeated episodes of deterioration or a recent, prolonged period of inability to function.[5] *Id.* § 12.03 C. In

---

**2.** Department of Health & Human Services, Social Security Administration, Federal Old–Age, Survivors, and Disability Insurance; Listing of Impairments—Mental Disorders, Final Rule, 50 Fed.Reg. 35,038 (1985).

**3.** The requirements of § 12.03 A are as follows:
A. Medically documented persistence, either continuous or intermittent, of one or more of the following:
1. Delusions or hallucinations; or
2. Catatonic or other grossly disorganized behavior; or
3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:
a. Blunt affect; or
b. Flat affect; or
c. Inappropriate affect;
or
4. Emotional withdrawal and/or isolation....
Listing of Impairments § 12.03 A.

**4.** The requirements of § 12.03 B are as follows:
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or
3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors)....
Listing of Impairments § 12.03 B.

**5.** The requirements of § 12.03 C are as follows:
C. Medically documented history of one or more episodes of acute symptoms, signs and functional limitations which at the time met the requirements in A and B of this listing, although these symptoms are currently attenuated by medication or psychosocial support, and one of the following:
1. Repeated episodes of deterioration or decompensation in situations which cause the individual to withdraw from that situation or to experience exacerbation of signs or symptoms (which may include deterioration of adaptive behaviors); or

addition, as indicated previously, a claimant who is unable to establish (by either of these routes) the criteria of a listed impairment can nonetheless obtain benefits if the Secretary fails to show that she is able to perform work that is available in the national economy.

## B. Facts of this Case

It is undisputed that Ms. Pagan suffers from chronic undifferentiated schizophrenia, as well as thyroid problems, high blood pressure and scoliosis (curvature of the spine). Appendix ("App.") 23. The Secretary also concedes that her illness and symptoms at least once in the past satisfied the criteria in paragraphs "A" and "B" of § 12.03. App. 33, 45. She has in fact been hospitalized four times for severe psychotic behavior. The history of her mental illness dates back approximately to 1973, when she left her job as a clerk-typist in order to care for her daughter and an ill relative. Now 50 years old, she has never worked since that time.

Ms. Pagan's first episode of severe psychotic behavior required hospitalization from March 10 to April 14, 1973. Administrative Record ("R.") 126. Since that time, she has continued to take anti-psychotic medication. She was hospitalized a second time in December 1980 for psychotic symptoms but resumed outpatient status after a short stay. R. 147, 150. Dr. Ranville Clark, the doctor who treated her from 1973 until 1980, stated in a 1981 letter that Ms. Pagan's prognosis was "not good" and that she would continue to need medication and psychiatric care for the foreseeable future. R. 126.

Ms. Pagan was admitted for her third hospital stay on September 13, 1981, after exhibiting "disorganized thought, severe insomnia and restlessness, and bizarre behavior" for several months. R. 128, 142. At the time of her admission to St. Elizabeth's Hospital, she exhibited "rambling speech, confusion, loose associations, auditory hallucinations, [and] paranoid delusions." R. 128. After two months of treatment with antipsychotic drugs, she was released on November 20, 1981. From that time until 1985, she received monthly outpatient treatment under the care of Dr. Alan C. Heine. R. 128.

Ms. Pagan was hospitalized for a fourth time from February 1 to March 14, 1984. Medical records show that she was suffering from delusions and believed that she was pregnant and in labor. R. 326, 253. Her speech was again rambling and distorted, and she was unable to bathe, dress, groom or care for herself. R. 257–60, 273. During her hospital stay, she exhibited agitated behavior, such as slamming doors, banging her head against objects, yelling, singing, throwing food and other objects, and harassing other patients. R. 251–52, 254–56. She also displayed child-like behavior, inappropriate laughter, disorientation and mood swings. R. 249, 260, 263, 264. Her aggressive behavior required that she be placed in seclusion for seven days. R. 254–65, 406. By early March, her symptoms had been brought under control, and she was released on March 14.

During the periods when she is not suffering from such severe symptoms, Ms. Pagan's mental illness is ameliorated by medication, and she exhibits symptoms of a lesser magnitude. Thus, records of outpatient treatment after the 1981 hospitalization and again after her 1984 hospitalization indicate that she was alert and well oriented when she checked in for her monthly visits. R. 130, 139, 333–46. Testifying in 1983 and again in 1986, she demonstrated an ability to function, to a limited degree, in daily life. During these periods she performed household chores, shopped, rode on public transit, sewed, read for pleasure, and played cards. R. 26–27, 30–31, 34, 99, 229, 234–35. Yet there was also evidence that during these same periods between hospitalizations, Ms. Pagan showed mild confusion and some impairment of her ability to concentrate. R. 128,

2. Documented current history of two or more years of inability to function outside of a highly supportive living situation.

Listing of Impairments § 12.03 C.

140, 155, 158–59, 223–24, 229; App. 76–91. Additionally, there was evidence that her medication caused drowsiness and decreased psychomotor activity. App. 81, 83. Finally, Dr. Heine reported in 1986 that these chronic symptoms of confusion, inability to concentrate and drowsiness are accompanied in Ms. Pagan's case by a "significant risk of relapse," which can be triggered by stress or anxiety. App. 89–91.

## C. *Prior Proceedings*

Ms. Pagan initially applied for SSI disability benefits in March 1982. Her claim was denied in May 1982, and she did not appeal. R. 37–52. Ms. Pagan filed a second application for benefits on August 10, 1982, which was also denied. At her request, the application was considered *de novo* at a hearing in September 1983. On January 16, 1984, the ALJ denied her application, and the Appeals Council denied her request for review on June 6, 1984. R. 11–16, 3–4. She sought judicial review, and the district court remanded the case to the Appeals Council on August 21, 1985, for consideration of the new evidence generated by Ms. Pagan's 1984 hospitalization. App. 9–16.

The Appeals Council in turn remanded the case to a new ALJ for further proceedings to be conducted under the Revised Listings, which had been promulgated since the district court ruling. R. 320. At a supplemental hearing in March 1986, the ALJ heard testimony from Ms. Pagan about her mental state and daily living activities, as well as testimony from a vocational expert. The expert, Dr. Leonard Perlman, responded to several hypothetical questions posed by the ALJ. His answers indicated that a person whose scoliosis, like Ms. Pagan's, rendered her unable to sit or stand for long periods could still work as a

voucher examiner or a file clerk. R. 239–40. He admitted that a "significant" failure of concentration would "very significantly" affect one's ability to do such work, while a "slight" failure of concentration would not affect her ability to do that kind of work. R. 241–42.

On September 5, 1986, the ALJ issued a recommended decision concluding that Ms. Pagan's combination of physical and mental symptoms prevented her from performing her past work as a clerk-typist, but that her impairment did not meet the criteria of the Listing of Impairments. He also concluded that she could perform alternative work, as a voucher examiner or file clerk. App. 17–33. The Appeals Council adopted the ALJ's findings, with one alteration,[6] and reached the same ultimate conclusion that she was not eligible for benefits. App. 34–45.

In reaching his conclusion that Ms. Pagan did not meet the criteria of the Listing of Impairments, the ALJ stated that none of Ms. Pagan's "psychotic decompensations" had persisted for a continuous period of 12 months and that she had responded sufficiently well to medication between those episodes to allow her to function in the community. App. 21. The Appeals Council in turn stated that these findings precluded Ms. Pagan from satisfying the "C" criteria, specifically § 12.03 C(1), of the Listing of Impairments. App. 35. The ALJ and the Appeals Council also found that Ms. Pagan failed to show the existence of at least two "B" criteria,[7] and that she was able to work as a voucher examiner or file clerk, precluding eligibility under 20 C.F.R. § 416.920(f). App. 22, 32–33, 35, 44–45. On cross-motions for summary judgment, the district court affirmed the Secretary's decision on all grounds. App.

---

6. The Appeals Council reversed the ALJ's finding that Ms. Pagan suffers from "repeated episodes of deterioration or decompensation in work or work-like settings," under the terms of Listing of Impairments § 12.03 B(4). App. 34. The Appeals Council based this change on its conclusion that Ms. Pagan's episodes of deterioration were caused by personal problems unrelated to work-like stresses. *Id.*

7. Specifically, the Appeals Council found that Ms. Pagan failed to satisfy the criteria of § 12.03 B(4) because her episodes of deterioration did not occur in work or work-like settings, and that she failed to satisfy the criteria of § 12.03 B(3) because she did not experience frequent deficiencies of concentration. (The ALJ had found that Ms. Pagan did satisfy § 12.03 B(4), but the Appeals Council reversed due to the non-work setting of the episodes of deterioration.)

46–49. Ms. Pagan now seeks reversal of the district court's ruling.

## II. DURATION OF EPISODES

The Secretary posits that a claimant cannot establish a listed impairment under § 12.03 C(1) unless one or more of the claimant's "episodes of deterioration or decompensation" persists for a continuous period of 12 months. App. 35. The Secretary finds support for this position in the Social Security Act itself, as well as two regulations promulgated under the Act. We disagree. Not only do the statute and regulations cited fail to provide support for the Secretary's position, but the 12–month duration requirement imposed in this case is contrary to the Secretary's own published explanation of these same regulations. Our decision adopts the reasoning of a number of other courts that have reached the same conclusion.

### A. Social Security Act and Regulations

#### 1. The Statute

■ The Secretary's brief relies on the text and history of 42 U.S.C. § 1382c(a)(3)(A), Appellee's Br. 29, which states that an individual is disabled only if his impairment is terminal, or if it "has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* The legislative history of a parallel provision indicates Congress' intent to limit disability protection to individuals "with extended total disabilities." S.Rep. No. 404, 89th Cong., 1st Sess. 98–99 (1965), U.S. Code Cong. & Admin. News 1965, p. 1943 (discussing 42 U.S.C. § 423(d)(1)(A)).[8]

Thus, the statute requires a claimant's "impairment" (or, in the words of the Senate Report, the claimant's "disability") to last at least 12 months. This requirement, however, is by no means synonymous with the Secretary's demand that each "episode of deterioration" must last at least 12 months. The Secretary's statutory interpretation ignores the distinction—one inci-

dentally drawn in his own regulations—between "episodes of deterioration" and underlying "impairments." According to the regulations, an individual can establish that she has a listed "impairment" if she suffers "[r]epeated episodes of deterioration or decompensation." Listing of Impairments § 12.03 C(1). A series of "episodes" occurring over time, in other words, is deemed to add up to an "impairment." It is the "impairment," not the "episodes," that must meet the 12–month requirement. 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.920(d) (claimant prevails if her "impairment" is a listed one and "meets the duration requirement"). Indeed, regulation § 12.03 C(1) states explicitly that a claimant has an impairment sufficiently severe to constitute a listed impairment even if her "symptoms or signs are currently attenuated by medication or psychosocial support." Listing of Impairments § 12.03 C(1). This section reflects the Secretary's congressionally ordered "realistic [ ] evaluat[ion of] the ability of a mentally impaired individual" to work. Reform Act, Pub.L. 98–460, § 5(a). According to § 12.03 C(1), Ms. Pagan's listing-level impairment, *i.e.,* schizophrenia, has persisted for 15 years, despite the fact that none of her episodes of deterioration lasted for more than a few months. The Secretary's application of the duration requirement in the instant case ignores this crucial distinction and consequently distorts the statutory language.

#### 2. Regulation § 416.925(a)

■ The Secretary also seeks support from a regulation, 20 C.F.R. § 416.925(a), which sets out the purpose of the Listing of Impairments. Appellee's Br. 30. Regulation § 416.925(a) states that the Listing of Impairments describes those impairments considered severe enough to prevent the claimant from working, and goes on to state the following:

> Most of the listed *impairments* are permanent or expected to result in death, or a specific statement of duration is made. For all others, the evidence must show

---

8. The quoted report concerned a 1965 amendment to Title II of the Social Security Act. The durational requirement at issue in this case, which appears in Title XVI of the Act, is identically worded.

that the *impairment* has lasted or is expected to last for a continuous period of at least 12 months.

*Id.* (emphasis added). The second sentence of the quoted passage merely restates the statutory standard, which, as we have indicated, attaches not to individual episodes but to impairments. The first sentence does state that, for some impairments, the Listing of Impairments indicates a specific duration requirement. But this truism offers no support for the Secretary's position in this case. It too refers to the duration of the claimant's "impairment," not to any single episode. Moreover, it is inapplicable to paragraph C(1) of the schizophrenia listing, which includes no "specific statement of duration" at all.[9] Indeed, the Secretary's brief itself paraphrases § 416.925(a) as requiring a claimant's "impairment" to persist for at least 12 months. Appellee's Br. 30. Thus, like the statute, this regulation contains no authorization for the Secretary to attach a durational requirement to individual psychotic episodes.

3. Regulation § 12.00 A

■ In oral argument, counsel for the Secretary turned to another regulation for support of the thesis that the episodes of acute schizophrenia must last 12 months. This regulation, which introduces the mental illness portion of the Listing of Impairments, reads as follows:

A. *Introduction:* The evaluation of disability on the basis of mental disorders requires the documentation of a medically determinable impairment(s) as well as

consideration of the degree of limitation such impairment(s) may impose on the individual's ability to work and *whether these limitations have lasted or are expected to last for a continuous period of at least 12 months.*

Listing of Impairments § 12.00 A (emphasis added). Stressing the word "limitations," counsel argued that "there is a durational requirement on the limitations imposed [by an impairment]." If the argument runs that the language of § 12.00 A—unlike the language of the Act and of regulation § 416.925(a)—attaches a durational requirement to the severe psychotic episodes suffered by a claimant such as Ms. Pagan, we reject it on the basis of § 12.00 A's own wording as well as the surrounding administrative materials published at the time of its promulgation.

The Secretary's argument focuses on the "limitations" that an impairment imposes on an individual. But the regulations do not at any point state, even obliquely, that they contemplate any difference in duration between the "impairment" and the limitations resulting from it. If the word "limitations" was chosen deliberately to impose a more rigorous durational requirement than that imposed by the Act, it is curious that this is not stated or discussed anywhere else in the regulations or commentary.[10] Nor is there anything intrinsic to the wording of § 12.00 A that suggests that it refers only to episodes of *severe* symptoms. Indeed, the explanatory material in the 1985 Revised Listing indicates

9. The "specific statement of duration" phrase refers to those listings that contain durational requirements other than 12 months. *E.g.,* §§ 1.02 A (persistent arthritic inflammation despite three months' prescribed therapy); 1.05 C (persistent symptoms of spinal disorders despite three months' prescribed therapy); 5.05 C (certain test results indicating liver disease, persisting at least five months); 5.05 D (certain symptoms of liver disease, persisting at least five months); 5.05 F(1)–(3) (certain symptoms of liver disease, persisting at least three months); 5.08 (weight loss due to gastrointestinal disorder, persisting at least three months); 6.02 C (certain test results indicating renal disease, persisting at least three months); 6.06 (persistent nephrotic syndrome despite three months' prescribed therapy); 7.00 B (three months' persistent impairment of hemic or lymphatic system);

7.16 C (certain test results indicating myeloma, persisting despite one month's prescribed therapy); 12.03 C(2) (schizophrenia, with two or more years' inability to function outside a highly supportive environment). 20 C.F.R., pt. 404, subpt. P. app. 1.

10. *See* Revised Listings, 50 Fed.Reg. at 35,039 (discussing the purpose of § 12.00 A without mentioning the durational requirement at all); *id.* at 35,042 (characterizing the durational requirement of § 12.00 A as "consistent with" the statutory standard and not mentioning any difference between it and the statutory standard); *see also* 20 C.F.R. § 416.925(a) (characterizing the Listing of Impairments as setting durational requirements for "impairments").

that this was not the intent of § 12.00 A. The Revised Listings expressly recognize that the threat of future episodes, coupled with the presence of mild symptoms between episodes, imposes a continuing "functional restriction" on an individual. Revised Listings, 50 Fed.Reg. at 35,045, 35,040, 35,043. The Secretary's assertion that the same set of circumstances does not impose "limitations" on the individual is indefensible. The obvious implausibility of the Secretary's assertion, coupled with its post-hoc timing,[11] leads us to conclude that § 12.00 A does not authorize a 12–month durational requirement for psychotic episodes.

## B. *Prior Cases*

In reaching the conclusion that there can be no durational limits imposed on the acute manifestations of chronic schizophrenia, we follow the lead of prior decisions of this and of other circuits. Every court to consider the issue has held that the Secretary cannot attach a 12–month durational requirement to individual episodes of psychotic behavior.

As the Fifth Circuit observed, "the courts which have considered the question have concluded that a claimant whose claim is based on a mental condition does not have to show a 12–month period of impairment unmarred by any symptom-free interval." *Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir.1986). The *Singletary* court distinguished between the duration of severe episodes and the duration of the impairment itself. "A finding that a claimant has a mental impairment which manifests itself from time to time over a long-term period is not inconsistent with the language of the statute, which requires that an *impairment* last 'for a continuous period of 12 months.'" *Id.* at 822 (emphasis added). For an ALJ to impose a 12–month requirement for psychotic episodes "confuses the duration requirement, which applies only to the impairment, with the severity requirement...." *Id.* at 821.

Although *Singletary* did not rely expressly on the logic of the 1985 Revised Listings to reach this conclusion, the new listings provide additional support for its holding. In *McGee v. Bowen*, 647 F.Supp. 1238 (N.D.Ill.1986), the court agreed with *Singletary* in holding that the Secretary cannot require psychotic episodes to persist for 12 months. *Id.* at 1250–51. The *McGee* court stated that the 1985 revisions make this conclusion inescapable, by "distinguish[ing] between remission and recovery." *Id.* at 1250. But the *McGee* court (faced with a case to which the new regulations could not be applied retroactively) went on to hold that a 12–month durational requirement for episodes was invalid even under the old scheme. "A showing of continuous psychotic symptoms for twelve consecutive months has never been a requirement for a finding of disability by reason of mental impairment." *Id.* at 1251.

Indeed, courts considering the issue prior to 1985 were unanimous in reaching this conclusion. *See Miller v. Heckler*, 747 F.2d 475, 478 (8th Cir.1984); *Dreste v. Heckler*, 741 F.2d 224, 226 n. 2 (8th Cir. 1984); *Lebus v. Harris*, 526 F.Supp. 56, 61 (N.D.Cal.1981); *Morrone v. Secretary of Health, Education & Welfare*, 372 F.Supp. 794, 800 (E.D.Pa.1974).

Although *Poulin v. Bowen*, 817 F.2d 865 (D.C.Cir.1987), did not raise the 12–month duration issue, this court rejected an ALJ's determination that a claimant who had been able to work sporadically was therefore ineligible for benefits. The court quoted from the Revised Listings and stated: "The Secretary, in the revised listings, has explicitly acknowledged that total disability is not incompatible with [a] pattern of alternating active and residual phases." *Id.* at 875. Despite the statutory requirement that a claimant have a continuing *impairment*, this court recognized "that schizophrenia's basic pattern of alternating episodes of acute and less acute symptoms means that occasional amelioration of

---

**11.** The fact that the Secretary did not cite § 12.00 A at any time in the lengthy history of this case prior to oral argument before this court strengthens our suspicion that the sup-

posed distinction between "this impairment" and "these limitations" has not been carefully considered.

symptoms does not preclude a finding of total disability." *Id.* at 876. It follows from this that the presence of such "alternating episodes" does not break up the continuity of an impairment for purposes of the statutory 12–month requirement.

Our conclusion as to the invalidity of the Secretary's insistence on 12–month–long psychotic episodes thus finds unanimous support in precedent. It is further strengthened by the government counsel's virtual concession of the point at oral argument.[12] On remand, Ms. Pagan's possible eligibility for benefits under Listing of Impairments § 12.03 C(1) must be reconsidered in light of this conclusion.

## III. EXISTENCE OF SYMPTOMS BETWEEN EPISODES

■ The Secretary does, however, advance one additional contention that we shall address here. He insists that a claimant is not entitled to benefits unless he or she suffers significant symptoms of mental illness during the periods between psychotic episodes. Appellee's Br. 30–31. According to the Secretary, a claimant whose mental illness is "reasonably controlled by medication and treatment" is not impaired. *Id.* Counsel at oral argument elaborated on this theme by stating that "minimal" deficiencies in concentration or alertness are insufficient to maintain an impairment, while "more severe, more acute" symptoms such as the hallucinations and delusions suffered by the claimant in *Poulin v. Bowen* would be enough.[13] We hold that such a requirement is inconsistent with the Secretary's own regulations.

The claimant in *Poulin* did in fact suffer more severe symptoms between hospitalizations than Ms. Pagan does. *Compare Poulin*, 817 F.2d at 868 (paranoid delusions of being spied on, auditory hallucinations) *with* App. 32, 44 (deficiencies of concentration, slight difficulties in social functioning, slight restriction of daily living activities). Nothing in the *Poulin* opinion suggests, however, that Poulin's symptoms were evaluated to see if they met some minimum level of severity needed to sustain a finding of continuing impairment.

Nor do the regulations authorize the position the Secretary asserts. Regulation § 12.03 C states explicitly that a person's impairment can remain at listing-level severity even after the "acute" symptoms described in paragraphs "A" and "B" have been "attenuated by medication or psychosocial support." Listing of Impairments § 12.03 C. The Listing of Impairments, including § 12.03 C, describes impairments deemed "severe enough" to merit the award of benefits. 20 C.F.R. § 416.925(a). For the Secretary now to require symptoms more severe than § 12.03 C dictates is a violation of his own regulations.

The invalidity of the Secretary's position is made even more evident by the explanations accompanying the Revised Listings. These statements indicate that a mentally ill person who is in remission can remain eligible for benefits due to the "more subtle manifestations or his or her disorder." Revised Listings, 50 Fed.Reg. at 35,038. "[S]igns and symptoms need not be currently severe for there to be severe, listing level functional restriction." *Id.* at 35,045. Specifically in regard to schizophrenia and

---

**12.** When pressed on the point, counsel for the Secretary stated as follows:

> I think here in applying [§ 12.03 C(1)], that both the ALJ and the Appeals Council made an error, quite frankly, in finding first of all that the "[r]epeated episodes of deterioration or decompensation in situations which cause the individual to withdraw" did not exist.... There were "repeated episodes," or there was more than one episode.... And in that instance they erred against the appellant.

**13.** The Secretary's brief also suggested that symptoms such as those in *Poulin* were re-

quired. Appellee's Br. 31. It is somewhat unclear whether the Secretary is now advancing a rationale not raised at the administrative level. The opinions of the ALJ and the Appeals Council are themselves ambiguous on this point. *See* App. 21 (observing that claimant functions well in daily life as a result of medication); App. 35 (same). At any rate, since this rationale arguably lies at the root of the Secretary's action and since it was stressed so strongly at oral argument by government counsel, we address its validity in the interest of guiding the remand and avoiding another unnecessary appeal.

related disorders, the Revised Listings make the following observation:

> [T]he more obvious symptoms of these disorders are often lessened by medication or support from mental health facilities or other sources. Individuals who have a medically documented history of one or more episodes of acute symptoms, signs and functional limitations described in paragraphs A and B, may have a remission either induced by treatment or by living in a supportive environment (such as a supervised group home). Many such individuals remain disabled because they experience a return of symptoms and signs when they encounter stressful circumstances or when they leave the supportive environment of the supervised living situation or sheltered work.

Revised Listings, 50 Fed.Reg. at 35,040. In § 12.03 C and in other sections, the Revised Listings reflect the Secretary's recognition of "the episodic (recurrent) nature of mental disorders and limitations ... as a major factor in mental impairment." *Id.*, 50 Fed.Reg. at 35,043. None of these explanatory remarks implies that symptoms need to persist at the severe level experienced by the *Poulin* claimant in order for an impairment to exist.

The cases show that symptoms can be greatly reduced in severity without interrupting an "impairment." Indeed, they agree that the existence of an impairment is not necessarily negated even when an individual becomes stable enough to hold down a job for a limited period of time. *Poulin v. Bowen*, 817 F.2d at 868, 876 (claimant worked continuously for eleven months); *Singletary v. Bowen*, 798 F.2d at 820–21 (claimant was sporadically employed); *McGee v. Bowen*, 647 F.Supp. at 1242, 1251 (claimant worked continuously for three-quarters of a year); *Morrone v. Secretary of Health, Education & Welfare*, 372 F.Supp at 801 (claimant worked continuously for more than six months). As this court has stated:

> Symptom-free intervals, though sometimes indicative of a remission in the mental disorder, are generally of uncertain duration and marked by an impending possibility of relapse. Realistically, a person with a mental impairment may be unable to engage in competitive employment, as his ability to work may be sporadically interrupted by unforeseeable mental setbacks.

*Poulin*, 817 F.2d at 875 (quoting *Lebus v. Harris*, 526 F.Supp. 56, 61 (N.D.Cal. 1981)); *see also Singletary*, 798 F.2d at 821 (also adopting *Lebus* holding). This proposition cannot be squared with the Secretary's contention that only symptoms on the order of those experienced by the claimant in *Poulin*—hallucinations and delusions—can maintain impairment status without interruption.

The cases holding that short-term employment does not automatically negate the existence of an impairment are not inconsistent with the Revised Listings' description of an individual who "still cannot work because of more subtle manifestations of his or her disorder." Revised Listings, 50 Fed.Reg. at 35,038. The critical question is not whether the claimant has been stable enough to work for short periods, but whether he or she is able "to *hold* whatever job he finds for a significant period of time." *Singletary*, 817 F.2d at 822 (emphasis in original); *McGee*, 647 F.Supp. at 1251–52. The regulations expressly recognize that a claimant's having worked for a brief time does not in itself preclude eligibility. Listing of Impairments § 12.00 D. Rather, the ALJ is expected to evaluate the circumstances of such intermittent work attempts as evidence of ability or inability to work on a continuing basis. *Id.*

The Secretary contends that "the law is clear" that a claimant is not disabled if his or her mental impairment can be reasonably controlled by medication and treatment. Appellee's Br. 30–31. But as we discuss below, it is not quite that simple. Moreover, although this proposition is said to be supported by *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir.1986), *Gross* involved the control of stomach ulcers, arthritis and poor vision. *Id.* at 1165–66. The courts and even the Secretary's own regulations recognize the inapplicability of such precedents to schizophrenia cases.

*See Poulin,* 817 F.2d at 875 ("the normal course of mental illness distinguishes it from broken bones"); *Singletary,* 798 F.2d at 821; *Lebus,* 526 F.Supp. at 61 ("While the mere existence of symptom-free periods may negate a finding of disability when a physical ailment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of the claim."); Listing of Impairments § 12.03 C (mental impairment can persist despite "attenuat[ion] by medication").

More fundamentally, we emphasize that we do not of course hold that a claimant can obtain benefits even if there are *no* symptoms between severe episodes, however far apart, nor do we hold that the existence of *any* symptoms, no matter how slight, is sufficient to warrant a finding of disability. This record does not require us to reach such questions. We hold only that the Secretary erred by interpreting Listing of Impairments § 12.03 C as requiring symptoms equivalent in severity to hallucinations and delusions during the periods between psychotic episodes. Whether an individual remains impaired during remission periods depends on the particular circumstances, including the length of time spent in remission, the severity of the remission-period symptoms, and the likelihood, frequency and severity of relapses into severe psychotic behavior. *See Poulin,* 817 F.2d at 876; Listing of Impairments § 12.00 D; *see also Lebus,* 526 F.Supp. at 61 (at some point in time "a disorder may be presumed to have sufficiently abated so that it is no longer disabling"). On remand, Ms. Pagan's application must be reconsidered in light of this more flexible approach.

## CONCLUSION

We have determined that the Social Security Act and regulations do not authorize the Secretary to deny benefits on the ground that a chronic schizophrenic claimant has not experienced any episodes of severe psychotic behavior lasting as long as 12 months. We have determined, further, that the Secretary cannot deny benefits on the ground that a claimant's symptoms in the periods between such episodes must rise to some preordained level of severity such as hallucinations and delusions. We hold that Ms. Pagan's "impairment" must be assessed according to whether her symptoms between psychotic episodes, coupled with the likelihood of recurrence of such episodes, realistically permit her to function in the workplace. Consequently, we remand this case to the district court for further proceedings consistent with this opinion.

*So ordered.*