890 F.2d 416
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Paul MAHER, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 89-1295.
 United States Court of Appeals, Sixth Circuit.
 Nov. 30, 1989.
Opinion Published in Full 898 F.2d 1106.
 
 Before BOYCE F. MARTIN, Jr. and ALAN E. NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant Paul Maher appeals from a district court order affirming the Secretary's final decision that he was not disabled and, therefore, not entitled to child's insurance benefits (CIB) or supplemental security income (SSI). For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 On April 30, 1986, claimant Maher filed his application for SSI benefits which was considered constructively filed on February 12, 1986. 20 C.F.R. Secs. 416.390, 416.395. On June 9, 1986, Maher filed an application for CIB benefits. The Secretary denied claimant's applications both initially and upon reconsideration. Claimant then requested a hearing before an administrative law judge (ALJ), which was held on July 16, 1987. On December 11, 1987, the ALJ found that Maher had a medical impairment due to atrophy of the lower extremities, but that the impairment did not meet or equal a listed impairment. Because the ALJ found that claimant had the residual functional capacity to perform a full range of sedentary employment and fell within the medical-vocational guidelines (grids), claimant was not disabled and was not entitled to SSI benefits. The ALJ found that claimant failed to meet the twelve-month durational requirement for CIB benefits. The Appeals Council denied claimant's request for review and the ALJ's decision thus became the final decision of the Secretary.
 
 
 3
 Claimant appealed to the district court pursuant to 42 U.S.C. Sec. 405(g). The district court referred the case to a United States Magistrate. On September 26, 1988, the magistrate recommended that the Secretary's denial of CIB and SSI benefits be affirmed.
 
 
 4
 On November 7, 1988, the district court rejected the magistrate's recommendation. The district court affirmed the Secretary's denial of SSI benefits, but concluded that there was not substantial evidence in the record to support the Secretary's denial of CIB benefits and awarded claimant a closed period of disability for child's insurance benefits. The Secretary moved for reconsideration or, at a minimum, for clarification as to the period of disability. Upon reconsideration,[1] the district court found that claimant's school records showed that claimant had not been disabled for any continuous twelve-month period from 1981 through 1986 and claimant was thus not eligible for child's insurance benefits. On January 31, 1989, the district court, accordingly, vacated its prior decision, adopted the magistrate's recommendation, and stated that there was substantial evidence to support the Secretary's denial of SSI and CIB benefits. Claimant timely filed this appeal.
 
 II.
 
 5
 This court has jurisdiction on appeal to review the Secretary's final decision pursuant to 42 U.S.C. Sec. 405(g) which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining whether the Secretary's factual findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole." Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam).
 
 III.
 
 6
 In order to qualify for receipt of child's insurance benefits based on the income of a parent wage earner, the child must (1) file an application for child's benefits, (2) at the time of filing, be unmarried and (3) be under age 18, be 18 years or older and have a disability that began before age 22 years old,[2] or be 18 years or older and qualify for benefits as a full time student. 20 C.F.R. Sec. 404.350. The regulations governing child's insurance benefits are set forth at 20 C.F.R. Pt. 404, Subpt. D, and incorporate the regulations at 20 C.F.R. Pt. 404, Subpt. P for purposes of determining disability. 20 C.F.R. Sec. 404.302. Additionally, in order to qualify for child's insurance benefits claimant must have a medically determinable physical or mental impairment that can be expected to result in death, or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. Sec. 423(d)(1)(A).
 
 
 7
 Claimant argues that the ALJ improperly rejected medical evidence of a continuing disability that began before age 22 and met the twelve-month durational requirement. Claimant argues that he suffers from Charcot-Marie Tooth atrophy, a progressive neuropathic syndrome characterized by foot and leg deformities, weakness and atrophy. The disease was diagnosed as early as 1977 when plaintiff was twelve years old. Between February 1981 and July 1985 claimant underwent a series of six corrective surgeries related to the disease: (1) a triple arthrodesis of the right ankle in February 1981; (2) arthrodesis of the left ankle in November 1981; (3) osteotomy of the right tibia in February 1983; (4) a left tibial osteotomy in November 1983; (5) a lengthening of his Achilles tendon in October of 1984; and (6) a procedure for recurrent dislocation of the patella in November 1985. Claimant contends that the medical evidence indicates that the severity of the underlying disease coupled with the long recuperative periods associated with these surgeries rendered him disabled from February 1981 through July 1986.
 
 
 8
 The Secretary argues that substantial evidence establishes that claimant was never continuously disabled for twelve consecutive months during the February 1981 through July 1986 time frame. Although claimant underwent six surgical procedures in five years, his period of convalescence was never more than several months for each surgical procedure. Moreover, two of the procedures were elective and the scheduling of these procedures was based on factors other than medical necessity.
 
 
 9
 We find that there is substantial evidence to support the Secretary's finding that Maher did not meet the twelve-month durational requirement for CIB benefits. Although there is substantial evidence that claimant was suffering from Charcot-Marie Tooth disease, a progressive disease is not per se disabling. Geiger v. Secretary of Health and Human Servs., No. 85-3951, Slip Op. at --- (6th Cir. November 7, 1986). Dr. Iqbal, a consultative physician, who examined claimant in June 1986, found that the progression in the muscle atrophy was slow and remained the same for long periods of time. Dr. Iqbal noted that claimant was able to walk without any corrective device. Dr. Iqbal found that claimant would have difficulty walking or running, but that his transfer activities from sitting to standing to lying down were normal and well coordinated and his hand functions were normal. The medical records of the treating physician, Dr. Marcus, indicate that although Maher submitted to six surgical procedures in five years, he recovered from each procedure to the extent that he was capable of weight bearing on both legs within six months of each procedure. Moreover, Maher testified at the hearing before the ALJ that he usually needed two to three months to recover from surgery.
 
 
 10
 Claimant argues that to view the operations as six independent procedures overlooks the pain and gait problems which he experienced during the intervals when he was out of a cast. However, evidence from Maher's school records from the years 1981 to 1984 indicate that during that time period he was not prevented from attending school for a period of more than five months at the longest. During 1985, claimant completed a vocational cooking course at his high school. The sixth operation performed in 1985 was described by Dr. Marcus, the treating physician, as an elective procedure. Dr. Marcus almost exclusively prescribed only mild medications[3] for Maher and limited him only from strenuous sports activities at school. Mild medications taken by a claimant do not bear out allegations of severe disabling pain, Kimbrough v. Secretary of Health and Human Servs., 801 F.2d 794, 797 (6th Cir.1986), and a lack of physical restrictions constitutes substantial evidence for a finding of non-disability. Nunn v. Bowen, 828 F.2d 1140, 1145 (6th Cir.1987).
 
 
 11
 Claimant argues that the court in Pagan v. Bowen, 862 F.2d 340 (D.C.Cir.1988), held that symptom-free periods are not necessarily indicative of non-disability. However, that court limited its holding to cases dealing with schizophrenia and based its conclusion on the uncertainty of a mental disease. Id. at 349-50. When dealing with physical symptoms, courts have held that if the underlying impairment is insufficient to be disabling to a particular claimant, claimant's hospitalization and periods of recuperation represent distinct and separate periods of disability which cannot satisfy the statutory requirement of continuous disability for twelve months or more. Schaffer v. Califano, 433 F.Supp. 1218, 1224 (D.Md.1977) (periodic hospitalizations for reconstructive surgery necessitated by serious accident do not meet statutory requirement even though underlying impairment, which the surgeries are designed to correct, will continue to exist); Hemphill v. Weinberger, 483 F.2d 1137, 1139 (5th Cir.1973) (attacks of acute arthritis, which leave patient completely disabled, only temporarily prevent gainful employment if between attacks claimant has musculo-skeletal capacity for moderate activity); Bowman v. Califano, 482 F.Supp. 288, 292 (M.D.La.1980) (where impairment causes periods of confinement and recuperation which are less than twelve months in duration, plaintiff may not be considered disabled).
 
 
 12
 Finally, Dr. Lewis, the medical advisor assigned to assist the ALJ, opined that there was adequate time for convalescence between the surgeries which claimant underwent from 1982 to 1986. He conceded that he had not observed claimant's gait during that time period and could not determine from the medical records alone whether or not he had had a disabling impairment that lasted for twelve consecutive months. He suggested that school attendance records would be an excellent source to establish claimant's degree of mobility during these years. The record was supplemented with school records from 1981 through 1984, which indicated that claimant's impairment had not prevented him from attending school for more than five months at a time at the most.
 
 
 13
 We find that the medical records of Dr. Marcus and testimony of Dr. Lewis in conjunction with the school attendance records provide substantial evidence that claimant does not meet the twelve-month durational requirement between 1981 and 1984. The operation which claimant underwent in November 1985 was an elective procedure from which he recovered by July 19, 1986, his 22nd birthday, as evidenced by the medical exam of Dr. Iqbal in June 1986. For these reasons, we affirm the Secretary's determination that claimant does not meet the twelve-month durational requirement for a disability that began before the age of 22, and child's insurance benefits were, therefore, properly denied.
 
 IV.
 
 14
 We must next determine if there is substantial evidence to support the Secretary's determination that claimant was not entitled to receive supplemental security income.
 
 
 15
 The claimant has the ultimate burden to establish an entitlement to supplemental security income by proving the existence of a disability as defined in 42 U.S.C. Secs. 423(d), 1382c(a)(3). If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied. 20 C.F.R. Sec. 416.920(b). If the claimant is not found to have an impairment which significantly limits his or her ability to work (a severe impairment), then he or she is not disabled. 20 C.F.R. Sec. 416.920(c). Since the ALJ found that Maher suffered from a severe impairment, further inquiry was necessary. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments. 20 C.F.R. Sec. 416.920(d). If so, benefits are owing without further inquiry. In the instant case, the ALJ found that Maher did not suffer from one of the listed impairments.
 
 
 16
 The Secretary must next decide whether the claimant can return to the job he or she previously held. 20 C.F.R. Sec. 416.920(e). The Secretary determined that Maher had no past relevant work. At this step in the analysis, the Secretary must consider the claimant's residual functional capacity and age, education, and past work experience to see if there is work in the economy which claimant can perform. 20 C.F.R. Sec. 416.920(f). The Secretary found that claimant had the residual functional capacity to perform a full range of sedentary work. Sedentary work is defined as follows:
 
 
 17
 [It] involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
 
 
 18
 20 C.F.R. Sec. 416.967(a). Relying on the medical-vocational guidelines, otherwise known as the "grids," see 20 C.F.R. Pt. 404, Subpt. P., the Secretary found that Maher was not disabled under Grid Rule 201.27, which indicated that Maher was a younger individual, that he was a high school graduate, and that he had no previous work experience. The Secretary found that considering Maher's residual functional capacity for sedentary work and the significant number of performable jobs in the economy that a vocational expert testified were available, Maher was not disabled.
 
 
 19
 Claimant argues that he was tricked by the ALJ into stating that he was capable of sedentary employment and that the Secretary's finding that he could perform a full range of sedentary work is not supported by substantial evidence.
 
 
 20
 We find that Maher's testimony at the hearing before the ALJ consistently indicates that he has the capacity to perform a full range of sedentary work. He testified that although he had problems walking and standing for prolonged periods of time, he had no difficulty sitting. He stated that he could make a fist and had no difficulty in grasping small objects. After the ALJ described a visual inspection job, Maher testified that he could handle such a job. After the ALJ described to him the definition of sedentary work, Maher again stated he could handle that type of job.
 
 
 21
 Maher's belief that he could perform sedentary work was supported by the medical report of Dr. Iqbal. Dr. Iqbal opined that Maher had a definite weakness in leg muscles which restricted his ability to engage in heavy activity, but had normal strength of the upper extremities. The doctor noted that although claimant would have difficulty in walking or running fast, he was independent in his activities of daily living. Moreover, in July of 1987, Dr. Marcus, the treating physician, reported that Maher was essentially asymptomatic in all areas except for a callous beneath the plantar surface of the left first metatarsal head, which he believed could be treated with proper orthopedic devices.
 
 
 22
 We find that Maher's own testimony, which is supported by the medical reports of Dr. Marcus and Dr. Iqbal, provides substantial evidence that claimant has the residual functional capacity to perform a full range of sedentary work. We, therefore, affirm the decision of the Secretary that claimant is not disabled and not entitled to supplemental security income.
 
 
 23
 For the above reasons, we affirm.
 
 
 
 [1]
 The district judge initially stated that a letter by Dr. Lewis, who reviewed the school records, did not explicitly state that there was not a twelve-month continuous period of disability. However, after reviewing the record in light of the Secretary's explication of the evidence in the school records, the court concluded that claimant was not disabled for a continuous twelve-month period
 
 
 [2]
 Claimant was 22 on July 19, 1986
 
 
 [3]
 After the October 1984 operation, Dr. Marcus prescribed codeine p.r.n. After the other surgical procedures, Dr. Marcus prescribed no medication or only aspirin