**Michele G. BENDIX, Plaintiff–Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.**

No. 01–3498.

United States Court of Appeals, Seventh Circuit.

Submitted April 18, 2002.*

Decided April 19, 2002.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

---

Before POSNER, EASTERBROOK, and RIPPLE, Circuit Judges.

### ORDER

At age 51 Michele Bendix filed her most recent application for children's Social Security benefits, 42 U.S.C. § 402(d), alleging disabling childhood polio as well as adult post-polio syndrome. To be eligible for benefits, Ms. Bendix had to have become disabled before her twenty-second birthday and to have remained disabled thereafter. *Id.* § 402(d)(1)(B)(ii). Because substantial evidence supports the Commissioner's finding that neither illness rendered Ms. Bendix continuously disabled from age 22 through the date of her application for benefits, we affirm.

Ms. Bendix was born in 1945, and shortly after her fifth birthday she contracted polio. After a month-long hospital stay, her doctor noted that she had made a "good, rapid recovery," which was described two months later as "complete." The medical reports do not document a change in her condition for nearly thirty years, but by the early 1980s, Ms. Bendix began to experience weakness in her left foot and atrophy in her left leg. In 1982 she relayed to an orthopedist, Dr. George Sisson, that she started having instability in her foot a few years earlier, and in 1984 she similarly reported fatigue, aches, and weakness to doctors in Warm Springs, Georgia. In 1987 Ms. Bendix also visited the post-polio clinic at the University of Michigan, where Dr. William Waring reported that Ms. Bendix's polio had not limited her as a child but that she began experiencing leg weakness in 1981 and left-arm weakness more recently. Dr. Waring ordered an electromyogram (EMG), which showed old neurogenic changes, and in a 1988 report, he diagnosed Ms. Bendix with post-polio syndrome.

Ms. Bendix applied for Social Security disability benefits in 1992 and supplemental security income in 1993, and those applications were granted after an ALJ concluded that Ms. Bendix suffered from depression. In 1994 Ms. Bendix also applied for child's benefits, but that application and a second application were denied, and in 1997, Ms. Bendix filed a third application. An ALJ held a hearing in 1998 and received voluminous records from Ms. Bendix's prior applications, a statement from Ms. Bendix, a memorandum of law, and affidavits from Ms. Bendix's mother, cousin, and neighborhood friend.

The details contained in the statement and affidavits submitted by Ms. Bendix are vague, but they provide the only significant evidence of her condition from the 1950s to the 1980s. In her statement Ms. Bendix explained that after her childhood hospitalization she experienced pain, fatigue, and difficulty walking and that those symptoms persisted throughout her life. To overcome her limitations, Ms. Bendix explained, she learned to complete tasks using few physical motions and to work off of adrenaline. Although after high-school she worked several secretarial jobs and then got married in 1964, work allegedly

caused her fatigue, and after her daughter's birth, she became a homemaker. According to her mother, Ms. Bendix initially limped after contracting polio but that stopped when she regaining her strength, enabling her to participate in childhood activities. Ms. Bendix's cousin added that although Ms. Bendix did not participate with her relatives in many physical activities as a child, he recalled her playing table games. And Ms. Bendix's friend noted that she had learned of Ms. Bendix's polio only in the last decade but that she remembered Ms. Bendix's childhood as less active than her own.

Based on the evidence presented by Ms. Bendix, the ALJ denied benefits, concluding that Ms. Bendix's childhood polio qualified as a medically determined impairment but that it did not cause more than minimal functional limitations when Ms. Bendix reached age 22. After the Social Security Administration's appellate tribunal declined review, the ALJ's decision became the final decision of the Commissioner. We will uphold that decision if it is supported by substantial evidence and is free of legal error. 42 U.S.C. § 405(g).

On appeal Ms. Bendix identifies a number of issues, but one is dispositive. To receive child's benefits based on her deceased father's earnings record (which is how she applied), Ms. Bendix needed to demonstrate that she had a disability before attaining age 22 and that this disability continued without interruption through the date of her application. 20 C.F.R. § 404.350; *see Smolen v. Chater,* 80 F.3d 1273, 1280 (9th Cir.1996) (collecting cases). The problem is that the record contains no evidence that Ms. Bendix's polio prevented her from working between 1967, when she turned 22, and the early 1980s, when she began to show signs of post-polio syndrome. A "disability" under the Social Security Act involves not only a medically determinable physical or mental impairment but also one that prevents the claimant from working. 42 U.S.C. § 423(d)(1)(A). And here there is no evidence that Ms. Bendix could not work for the entire relevant period.

Ms. Bendix submits that the ALJ should have found her condition ongoing based on her EMG results and the documents she presented to the ALJ. But the EMG tests show only neurogenic changes compatible with "old poliomyelitis," and the remainder of the record provides substantial evidence to suggest that Ms. Bendix recovered significant motor functioning as a child and that her condition worsened only well after she became an adult. After her initial hospitalization, for example, her doctor noted that she made a good recovery, which was later described as complete. Ms. Bendix then returned to school, graduated on time, held several jobs, got married, and had four children. No medical reports during this period reflect recurring problems related to polio. Indeed the record contains no relevant reports from 1951 to 1971 at all, and the reports that do exist fail to document weakness and atrophy consistent with Ms. Bendix's current limitations until 1981. Ms. Bendix ultimately had the burden of coming forward with medical evidence of her continuing disability, 42 U.S.C. § 423(d)(5); *Luna v. Shalala,* 22 F.3d 687, 693 (7th Cir.1994); *Maher v. Secretary of Health & Human Servs.,* 898 F.2d 1106, 1110 (6th Cir.1989), and without such evidence, the record supports the ALJ's conclusion that Ms. Bendix could perform basic work-related tasks when she turned 22.

As for the anecdotal evidence presented by Ms. Bendix, the ALJ found it unreliable, and we will not substitute our judgment for that of the ALJ or independently weigh the evidence. *See Kepple v. Massanari,* 268 F.3d 513, 516 (7th Cir.2001).

Here the ALJ rightly could conclude that the affidavits from Ms. Bendix's friend and family members describe events over thirty years old and that they therefore have questionable evidentiary value. Moreover, even if credited, these affidavits appear to undermine Ms. Bendix's claim in many ways. Ms. Bendix's mother attested, for example, that her daughter stopped limping when she regained her strength. And Ms. Bendix's childhood friend noted that she saw signs of Ms. Bendix's illness in the last decade, but not as a child. The ALJ was also entitled to depreciate Ms. Bendix's contention that she experienced pain, fatigue, and difficulty walking throughout her life because those statements conflicted with statements made to her doctors before she applied for benefits. As the ALJ observed, Dr. Sisson's orthopedic report shows that Ms. Bendix believed she made a "full recovery" from her childhood illness and that she began to notice instability in her foot only a "couple of years ago." Similarly, Dr. Waring's 1987 report relays that Ms. Bendix's polio had not limited her as a child but that she began to experience leg weakness in 1981 and arm weakness even more recently. Given that Ms. Bendix has identified no independent evidence that conflicts with the rendition in these reports, we will not disturb the ALJ's evaluation of the evidence.

Ms. Bendix's remaining arguments are frivolous, and we discuss them only briefly. First, she contends that the ALJ should have considered whether her childhood polio and post-polio syndrome qualified as a conclusively disabling listed impairment. Listing 11.11 supplies the relevant provision here, and it requires a finding of anterior poliomyelitis with difficulty swallowing or breathing, unintelligible speech, or disorganized motor function. 20 C.F.R. Pt. 404, Subpt. P, App. 1., § 11.11; *see List v. Apfel,* 169 F.3d 1148, 1150 (8th Cir.1999); *Barron v. Sullivan,* 924 F.2d 227, 229–30 (11th Cir.1991). Again, however, even if Ms. Bendix could demonstrate that her limitations currently or at some point satisfied these criteria, the record would not support a finding that the criteria were met continuously. Second, Ms. Bendix argues that the ALJ should have back dated her application to 1982, when her mother applied for benefits. But the application date would be relevant only if the ALJ had found Ms. Bendix disabled, *see* 42 U.S.C. § 402(j), and the evidence here entitled him not to do so. Third, Ms. Bendix maintains that she submitted additional materials in her administrative appeal but that the appellate tribunal improperly refused to consider them. Ms. Bendix's opening brief does not amplify on this contention, however, either by identifying what evidence she submitted or how that evidence was new, material, and not previously submitted for good cause. *See* 42 U.S.C. § 405(g); *Johnson v. Apfel,* 191 F.3d 770, 776 (7th Cir.1999). So this argument is waived. *See* Fed. R.App. P. 28(a)(9)(A); *see also Anderson v. Hardman,* 241 F.3d 544, 545 (7th Cir.2001).

AFFIRMED.