Freddie L. WILSON, Appellee,

v.

Elliot L. RICHARDSON, Secretary of Health, Education and Welfare, Appellant.

No. 71-1459.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 29, 1971.

Decided Jan. 11, 1972.

Anthony J. Steinmeyer, Atty., Dept. of Justice (L. Patrick Gray, III, Asst. Atty. Gen., Kathryn H. Baldwin and Thomas J. Press, Attys., Dept. of Justice, and Keith S. Snyder, U. S. Atty., on brief), for appellant.

Donald M. Tepper, Charlotte, N. C. (Blackford & Tepper, Charlotte, N. C., on brief), for appellee.

Before SOBELOFF, Senior Circuit Judge, and CRAVEN and FIELD, Circuit Judges.

SOBELOFF, Senior Circuit Judge:

By this appeal the Secretary of Health, Education and Welfare seeks review and reversal of the District Court's finding that appellee Freddie L. Wilson is disabled within the meaning of the Social Security Act and entitled to disability benefits.

The Act defines disability in 42 U.S.C. § 423(d) (1) (A) as

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental inpairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Section 423(d) (4) authorizes the Secretary to prescribe by regulations

criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity.

The Section goes on to provide that, notwithstanding the usual tests for disability (the medical evidence and the claim-

ant's age, education and work experience [1]), an individual whose services or earnings exceed the standards to be set by the Secretary shall be found not to be disabled.

Pursuant to the authority granted him in section 423(d) (4) the Secretary promulgated a Regulation for the evaluation of earnings from work: 20 C.F.R. § 404.1534. Section 404.1534(b) provides that

An individual's earnings from work activities averaging in excess of $140 a month shall be deemed to demonstrate his ability to engage in substantial gainful activity unless there is affirmative evidence that such work activities themselves establish that the individual does not have the ability to engage in substantial gainful activity under the criteria in §§ 404.1532 and 404.1533 and paragraph (a) of this section.[2]

The claimant applied for disability benefits in December 1968, alleging that he had been unable to work since June 1967. His claim was denied after a hearing in May 1969. The Hearing Examiner found that Wilson had been gainfully employed during the period of his alleged disability and that his impairments had not precluded him from earning an average wage in excess of $125 per month, the limit under the Regulation as it then stood. At the time of the hearing, Wilson had been employed as a grocery bagger for about a month, earning in excess of $125 per month. During the preceding three years, he had worked sporadically in at least 11 different jobs, including employment as a dishwasher, a kitchenhelper, a window primer, and a paper boy. His average earnings for this period exceeded the Secretary's limit. The Hearing Examiner noted that Wilson currently worked forty hours a week. He concluded that Wilson did not come

---

1. *See* section 423(d) (2).

2. As originally promulgated this Regulation provided that earnings in excess of ▮▮▮ $100 a month demonstrate ability to engage in substantial gainful activity. This amount was raised to $125 in 1969 and to the present $140 in 1970.

within certain exemptions from the earnings limit stated in sections 404.-1532, 404.1533, and 404.1534(a) relating, *inter alia,* to work in a "sheltered shop" or for less than full time.

In finding that Wilson was not disabled, the Hearing Examiner relied exclusively on the man's earnings history and ignored the uncontradicted evidence that the claimant suffers from severe impairments to his feet, legs and back,[3] is subject to mood disorders, which, in the words of a psychiatrist, "make it difficult if not impossible for him to compete in a society requiring skills", has an I.Q. of only 60, and suffers from frequent dizzy spells and headaches. In sum, the diagnoses of the two physicians who conducted extensive examinations of Wilson in 1968 noted "considerable deformities of both feet," "mental deficiency that is severe" and "severe disability."

Wilson thrice testified at the hearing that he was forced to work despite his inordinate pains because he was without other means of support. Exhausted, he would go home after work and soak his feet and rest until the next morning. Listening to Wilson's numerous complaints and the uncontradicted medical evidence of his ailments and physical suffering, the Hearing Examiner was moved to comment that "it is a fact that claimant suffers from impairments that when analyzed can only evoke sympathy and admiration for his pluck in continuing to work."

Nevertheless, the Hearing Examiner, upon finding that the claimant earned more than $125 per month held him not disabled within the meaning of the law. This decision was upheld by the agency's Appeals Council and thus became the final decision of the Secretary. 20 C.F.R. § 404.940.

Review was sought in the District Court. The District Judge reversed the Secretary, relying on Leftwich v. Gardner, 377 F.2d 287 (4th Cir. 1967), and Hanes v. Celebrezze, 337 F.2d 209 (4th Cir. 1964), as authority for his holding that "where the plaintiff, despite his disablement, chooses to support himself or his family, he should not be penalized because of his endurance in the face of pain and adversity." *Leftwich* and its progenitors prescribe an examination of the "totality of the circumstances" in determining disability.

> The test is not whether Leftwich by willpower can stay on his feet another day—but whether objectively and in the totality of circumstances, including especially his afflictions, he is disabled within the meaning of the Social Security Act. Substantial medical evidence establishes that the claimant was totally and permanently disabled. In spite of such disablement, he chose to work every day to support his family. * * * We think Congress did not intend to exclude from the benefits of the Act those disabled persons who because of character and a sense of responsibility for their dependents are most deserving.

After reviewing the medical evidence presented at the hearing, the District Judge concluded that "there is not a scintilla of evidence in the entire record, including the medical reports, that the patient has the ability to 'engage in any substantial gainful activity' except the fact that he works as a dishwasher, bag boy, paper boy or whatever low grade employment he can get in order to feed and clothe himself."

However, since the *Leftwich* decision, Congress has enacted legislation which modifies, if it does not overrule, the *Leftwich* doctrine. Harris v. Richardson, 450 F.2d 1099 (4th Cir.

---

3. These impairments appear to be related to injuries Wilson sustained from an assault committed upon him in 1961 and to congenital deformities in both feet. The 1961 assault left him almost a complete quadriplegic, but he gradually regained the use of his arms and legs. Yet in 1968, he continued to suffer from severe pains in his shoulder, fingers, and back. During 1968 he was diagnosed as suffering from "a serpentine type flatfoot which can be considerably disabling."

1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970). In light of the 1967 amendments to the Act, we must set aside the District Court's decision because of its reliance on *Leftwich*. However, our holding, that the District Court should have applied the 1967 amendments and the regulations passed thereunder, does not require that Wilson must automatically be barred from recovery because his earnings exceeded the average monthly wages set by the Secretary. It is important to note that section 404.1534(b) of the Regulations, the very one which provides the $140 limit on earnings from work, provides an exception no less explicit: that earnings exceeding the limit are to be deemed demonstrative of a claimant's ability to engage in substantial gainful activity

> *unless there is affirmative evidence that such work activities themselves establish that the individual does not have the ability to engage in substantial gainful activity under the criteria in §§ 404.1532 and 404.1533 and [404.1534(a)].*" (Emphasis supplied.)

The sections referred to set forth illustrations of some circumstances where the amount of earnings will not be deemed completely dispositive of the issue of the claimant's ability. The examples given in these sections should not be read as the only exceptions to the limit on earnings. The "unless" clause of the Regulation uses the words "under the criteria in §§ 404.1532 and 404.1533 and [404.1534(a)]." This clearly indicates that general principles are to be derived from the examples in the sections cited in the "unless" clause. Thus the illustrations found in those sections are meant as no more than examples; they do not exhaust the possible applications of the "unless" clause.

This claimant's case cannot be decided simply on the basis of his earnings, for his employment history is extraordinary. In a period of three years he held at least 11 jobs. He testified that his impairments were the cause of frequent job changes in at least several instances. He was fired after one employer learned of his ailments, and he had to quit some of the jobs because of the strain on his legs and back.[4] He also stated that he lied to his employers about his impairments because he feared that they would not hire him if they knew of his condition.

A question therefore arises whether Wilson's employment history itself demonstrates his inability to engage in substantial gainful activity. "Substantial gainful activity" has been defined as

> activity from which something gainful, with some degree of regularity should be inferred * * * [and when] a person's activity may be frequently or transitorily restricted, [it] cannot be the premise for a finding of ability to engage in any substantial gainful activity.

Ellerman v. Flemming, 188 F.Supp. 521 (W.D.Mo.1960). That this construction of substantial gainful activity was not upset by the 1967 congressional amendments is demonstrated by the Secretary's current Regulations. Section 404.1534(a) includes the following illustration:

> Where an individual is forced to discontinue his work activities after a short time because his impairment precludes continuing such activities, his earnings would not demonstrate ability to engage in substantial gainful activity.

We point out, without deciding, that under this language or the principle the Regulation embodies, Wilson's sporadic and transitory activities may demonstrate not his ability, but his inability to engage in substantial gainful activity.

Because the District Court relied on the *Leftwich* line of cases, it did not undertake to determine whether claimant's

---

4. Wilson was also forced to quit a job as a window primer because of an allergy to paint. In only one instance an employer fired him, from a dishwashing job, because it claimed he left work early to catch a bus home.

work record amounted to affirmative evidence that, under the "unless" clause of section 404.1534(b), he was unable to engage in substantial gainful activity. Although the Hearing Examiner handsomely expressed sympathy and admiration for the claimant's "pluck" in working despite his severe handicaps and pains, we think, in fairness, the claimant is entitled to more than sympathy; he is entitled to have his case considered in the light of the "unless" clause.

Accordingly, the judgment is vacated and the case is remanded to the District Court for such consideration.

Vacated and remanded.