172 F.3d 690
 Unempl.Ins.Rep. (CCH) P 16162B, 99 Cal. Daily Op.
Serv. 2429,
1999 Daily Journal D.A.R. 3191
Loyd E. GATLIFF, Jr., Plaintiff-Appellant,
v.
COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,
Defendant-Appellee.
 No. 97-36161.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 12, 1999.
Decided April 2, 1999.
 
 D. James Tree, Yakima, Washington, for the plaintiff-appellant.
 Richard H. Wetmore, Social Security Administration, Seattle, Washington, for the defendant-appellee.
 Appeal from the United States District Court for the District of Oregon; Robert E. Jones, District Judge, Presiding. D.C. No. CV-96-01656-JO.
 Before: LEAVY, McKEOWN, and WARDLAW, Circuit Judges.
 McKEOWN, Circuit Judge.
 
 
 1
 Does a string of sequential, short-term jobs constitute "substantial gainful activity" under the Social Security Act (the "Act")? 42 U.S.C. § 1382c(a)(3)(A). Put more directly, does a claimant's cobbling together some 150 different jobs over his remaining 25-year work life constitute meaningful, sustained employment?
 
 
 2
 We must decide whether a Social Security claimant's ability to perform successive jobs, generally lasting no more than two months, renders him capable of substantial gainful activity. We conclude that it does not, and therefore reverse the judgment of the district court. Substantial employment cannot be pieced together from a collection of insubstantial attempts. This is one instance in which the maxim e pluribus unum does not apply.
 
 BACKGROUND
 
 3
 Loyd E. Gatliff, Jr. is functionally illiterate and suffers from several severe mental impairments, including antisocial personality disorder, developmental reading and expressive language disorder, and probable attention deficit and hyperactivity disorder. Although he completed eleventh grade, with the last several years in special education, early on he was certified as a "mentally retarded child for special class placement." During the 15 years prior to his claimed disability, Gatliff was employed sporadically and held 20-30 jobs. He was terminated from at least half of those jobs, the longest of which lasted six to eight months, due to anger problems and conflicts with supervisors or co-workers.
 
 
 4
 Gatliff applied for disability insurance and supplemental security income benefits, claiming disability based on mental impairment, a fused vertebra in his neck, a bad knee and a bad back. After both applications were denied, Gatliff requested and was granted an administrative hearing. During the hearing, Gatliff and his wife testified about his neck and back pain as well as his antisocial behavior and difficulty controlling his anger. Gatliff's wife testified that Gatliff regularly has fits of anger, which involve throwing and kicking things and punching doors and walls.
 
 
 5
 After considering conflicting evidence about Gatliff's ability to work, the administrative law judge ("ALJ") found that Gatliff could not return to his previous work in logging, construction or landscaping. The ALJ concluded that he could perform light work but that his capacity was reduced by his social and intellectual limitations. Much of the hearing focused on the practical impact of Gatliff's mental limitations. In response to the ALJ's hypothetical question, which assumed that Gatliff was capable of a job demanding only "light work," "simple and repetitive" tasks, and "little interaction with co-workers and supervisors," a vocational expert testified that Gatliff could perform the jobs of office cleaner or partition assembler. However, in response to a question posed by Gatliff's attorney, the vocational expert conceded that Gatliff could only be expected to stay in any one job for a "couple of months" before being fired as a result of his mental impairments. The expert also testified that Gatliff's pattern--the ability to obtain, but not maintain, jobs--would continue.
 
 
 6
 The ALJ determined that Gatliff was capable of performing light work and was therefore not disabled. The Appeals Council declined Gatliff's petition for review and the district court upheld the ALJ's decision, concluding "as a legal matter, [that] sequential full-time employment can constitute substantial gainful employment." On appeal, Gatliff contends that his inability to maintain employment for longer than several months in any one job renders him incapable of engaging in substantial gainful activity and that he is therefore disabled under the Act.[1]
 
 STANDARD OF REVIEW
 
 7
 We review de novo the district court's order upholding the Commissioner's denial of benefits, Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir.1997), and will set aside the Commissioner's findings only "if they are based on legal error or are not supported by substantial evidence," Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.1998).
 
 ANALYSIS
 
 8
 Like bookends, two key findings frame our analysis: (1) the ALJ found that Gatliff's residual functional capacity for the full range of light work is reduced by his mental impairments, and (2) the Commissioner of the Social Security Administration (the "Commissioner") concedes that Gatliff likely cannot maintain any single job for more than approximately two months. The conclusion: Gatliff is employable, but only for short periods. The issue then is one of duration and what period of employment satisfies the requirements of the Act.
 
 Disability Under the Social Security Act
 
 9
 Under the Act, disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Social Security Administration's ("SSA") regulations include guidelines to determine whether work qualifies as substantial gainful activity:
 
 
 10
 We will generally consider work that [the claimant] is forced to stop after a short time because of [his] impairment as an unsuccessful work attempt and [his] earnings from that work will not show that [he is] able to do substantial gainful activity.
 
 
 11
 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1) (1999). The concept is further refined in Social Security Ruling 84-25.[2] The SSA generally presumes that a work effort lasting three months or less because of the claimant's impairments is an "unsuccessful work attempt," and is not considered evidence of an ability to engage in substantial gainful activity. SSR 84-25, 1984 WL 49799 (1984).
 
 Substantial Gainful Activity
 
 12
 The Commissioner concedes that Gatliff "has a work history showing that he performs a job for a duration of about two months," and does not dispute that the pattern will continue, but contends that Gatliff is capable of substantial gainful activity because he is not precluded from moving from one job to the next job after termination. We reject the Commissioner's argument.
 
 
 13
 We begin by noting that no Ninth Circuit authority controls the outcome of this case. The Commissioner points to Keyes v. Sullivan, 894 F.2d 1053, 1056 (9th Cir.1990), as analogous precedent. Keyes, however, is not controlling. Keyes involved part-time (five and a half hours per day, five and a half days per week), long-term (at least ten years) employment, whereas this case involves full-time, short-term employment. Unlike the claimant in Keyes who worked over ten years, Gatliff can work full-time but is incapable of sustaining employment for a period longer than approximately two months.
 
 
 14
 In Tylitzki v. Shalala, 999 F.2d 1411 (9th Cir.1993), we considered whether a claimant's ability to hold jobs successively for eleven months at a time before being fired because of his alcoholism constituted substantial gainful activity. Id. at 1415. We held that "such a series of jobs would constitute substantial gainful activity when they are of significant duration as under the terms of the ALJ's hypothetical [i.e., 11 months]." Id. (emphasis added). While Tylitzki establishes that a series of jobs, each lasting almost a year, could constitute substantial gainful activity, it teaches nothing about successive jobs of a substantially less significant duration.
 
 
 15
 Other circuits looking at this question have required that a claimant be able not only to obtain a job, but to maintain the job for a significant period of time. In Singletary v. Bowen, 798 F.2d 818 (5th Cir.1986), for example, the Fifth Circuit concluded that:
 
 
 16
 A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time.
 
 
 17
 Id. at 822. The claimant in Singletary, like Gatliff, suffered from a personality disorder that prevented him from holding a job for a long period of time.[3] The ALJ nevertheless found that the claimant was capable of substantial gainful activity because some of his doctors determined that he was "employable." Id. Because it was unclear whether the record would support a finding that Singletary could remain employed for "significant periods of time," the Fifth Circuit reversed and remanded for further consideration of that issue. Id. at 823.[4]
 
 
 18
 In Tennant v. Schweiker, 682 F.2d 707 (8th Cir.1982), another analogous case, the Eighth Circuit reversed the denial of disability benefits where the claimant, who suffered from a personality disorder, had held forty-six jobs in twelve years of employment. Id. at 710-11. Framing the issue as "whether the claimant has the emotional capacity to engage in sustained employment," the court found that, despite the claimant's physical capacity to perform light work, there was no evidence of "work that [the claimant could] perform for a sustained period," and therefore no evidence that the claimant could engage in "substantial gainful employment." Id.[5]
 
 
 19
 The Third, Fourth, Sixth, Tenth and D.C. Circuits have similarly imposed a durational requirement on the concept of substantial gainful activity. See, e.g., Kangas v. Bowen, 823 F.2d 775, 778 (3rd Cir.1987) (reversing and remanding where ALJ did not consider whether claimant could maintain "regular, continuing or sustained" employment in light of his frequent hospitalizations); Wilson v. Richardson, 455 F.2d 304, 307 (4th Cir.1972) (finding that claimant's holding eleven jobs in three years "may demonstrate not his ability, but his inability to engage in substantial gainful activity");[6] Parish v. Califano, 642 F.2d 188, 192 (6th Cir.1981) ( "The phrase 'substantial gainful activity' implies employment with some degree of regularity."); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir.1994) (quoting Singletary standard); Pagan v. Bowen, 862 F.2d 340, 350 (D.C.Cir.1988) ("The critical question is not whether the claimant has been stable enough to work for short periods, but whether he or she is able 'to hold whatever job he finds for a significant period of time.' ") (quoting Singletary, 798 F.2d at 822).
 
 
 20
 We are persuaded by the reasoning of our sister circuits that substantial gainful activity means more than merely the ability to find a job and physically perform it; it also requires the ability to hold the job for a significant period of time. It requires no leap to conclude that two months is not a significant period. Indeed, the SSA considers jobs that end within three months because of the claimant's impairments to be "unsuccessful work attempts," and does not consider such short-term jobs as evidence of an ability to engage in substantial gainful activity. SSR 84-25;[7] see also Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir.1996) ("The 'unsuccessful work attempt' concept was designed as an equitable means of disregarding relatively brief work attempts that do not demonstrate sustained substantial gainful employment."). If a job of less than three months does not constitute substantial gainful activity when considering the claimant's past work history, the same holds true with regard to prospective employment.
 
 
 21
 Where it is established that the claimant can hold a job for only a short period of time, the claimant is not capable of substantial gainful activity. The practical effect of upholding the Commissioner's view in this case demonstrates the point: assuming that Gatliff, who is now under 40, could work for another 25 years, he would have to perform 150 jobs, at a rate of six jobs per year, to remain employed. Such a result strains both common sense and the practical realities of the labor market. Although we do not purport to define exactly how long a period of employment must last to be considered "significant," a job of two-months' duration is certainly insufficient. The concept of substantial gainful activity requires more and consequently we hold that Gatliff was not capable of "substantial gainful activity."
 
 Date of Onset
 
 22
 Although Gatliff alleged a date of onset of June 1, 1991 in his application for benefits, he agreed at oral argument to accept the earliest onset date supported by the medical evidence in the record--the date of his examination by Dr. Lawrence J. Lyon. Accordingly, for purposes of calculating benefits, Gatliff's date of onset shall be September 29, 1993.
 
 
 23
 The judgment of the district court is REVERSED and the case is REMANDED to the district court with instructions to remand to the Social Security Administration for an award of benefits consistent with this opinion.
 
 
 
 [1]
 Because we find that Gatliff is disabled within the meaning of the Act due to his inability to engage in substantial gainful activity, we do not consider his alternative argument that he is unable to sustain employment without third-party intervention
 
 
 [2]
 Social Security Rulings ("SSR") are "final opinions and orders and statements of policy and interpretations" that have been adopted by the Administration. 20 C.F.R. § 402.35 (1999). Once published, as was Ruling 84-25, these rulings are binding precedent upon ALJs. Heckler v. Edwards, 465 U.S. 870, 873 n. 3, 104 S.Ct. 1532, 79 L.Ed.2d 878 (1984)
 
 
 [3]
 The court in Singletary did not specify how long the claimant could hold a job--only that he was unable to maintain employment for "long periods of time," for "significant periods of time," and for "more than limited periods of time." 798 F.2d at 822-23
 
 
 [4]
 See also Moore v. Sullivan, 895 F.2d 1065, 1069-70 (5th Cir .1990) (reversing and remanding in light of Singletary for a determination of whether claimant "will be able to maintain employment for significant periods of time"); Leidler v. Sullivan, 885 F.2d 291, 293-94 (5th Cir.1989) (reversing and remanding in light of Singletary where ALJ did not consider that claimant "is disabled if he can perform work but not enjoy sustained employment because of his condition")
 
 
 [5]
 See also Dix v. Sullivan, 900 F.2d 135, 138 (8th Cir.1990) (reversing and remanding for award of benefits where claimant was "not capable of holding a job for a significant period of time"); Parsons v. Heckler, 739 F.2d 1334, 1340 (8th Cir.1984) ("The Secretary's determination regarding the ability of a claimant to perform jobs in the national economy must take into account the actual ability of the claimant to find and hold a job in the real world.")
 
 
 [6]
 We agree with Gatliff that Wilson is not distinguishable on the ground that it "involve[s] working a few hours a day with interruptions," as argued by the Commissioner. Wilson, like this case, involved a claimant who could work full-time but short-term. Wilson, 455 F.2d at 307
 
 
 [7]
 Under SSR 84-25, in order for a work attempt to be considered "unsuccessful," the attempt must be preceded by a period of unemployment of at least 30 consecutive days or a "forced" change "to another type of work or another employer." Because it is undisputed that Gatliff would be unlikely to hold any job for more than approximately two months, the rationale of SSR 84-25 applies