Opinion by Judge SCHROEDER; Dissent by Judge M. SMITH.
OPINION
SCHROEDER, Circuit Judge:
This is a relatively rare petition to review a decision of the United States Railroad Retirement Board denying an application for benefits under the Railroad Retirement Act (“RRA”). 45 U.S.C. § 231 et seq. The RRA provides an annuity for disabled children of railroad workers. To qualify for benefits, the child must have been disabled prior to the age of 22 and have remained continuously disabled through the time of application for benefits. 45 U.S.C. § 231a; 20 C.F.R. § 216.71(d)(2)®.
The Board ruled the petitioner, Samuel Stephens, did not qualify because during three out of the 30 years preceding his application, he worked at three menial jobs. Even though he was fired from each, the Board ruled that the work constituted gainful employment that disqualified him from eligibility. The Board majority looked solely to the Board’s regulations, which set forth guidelines for the amounts of average monthly earnings that generally indicate substantial gainful activity. Because Stephens’s earnings exceeded that average between 1986 and 1989, the Board majority concluded he had not been continuously disabled. The Board did not, as the dissent contends, affirm or adopt the totality of the decision of the hearings officer. The hearings officer had also concluded that Stephens was not disabled before he was 22 by relying solely on a purported lack of medical records, even though psychiatric evaluations dating to age 14 demonstrated severe psychiatric problems that prevented him from successfully completing even special education. The Board did not discuss that issue. It relied exclusively on Stephens’s limited work experience after age 22, citing “evidence showing that Mr. Stephens performed substantial gainful activity in the years 1987-1989,” when Stephens was in his mid-20’s, to conclude that he had not been continuously disabled.
The dissenting Board member would not have viewed such earnings in isolation and would have granted benefits, looking to Stephens’s long history of *589 mental and physical problems and unsuccessful attempts to work. The record amply documents that long history of mental, emotional and physical problems. The petitioner, the son of a deceased railroad worker, was diagnosed at the age of 14 by a medical doctor as having severe mental and emotional problems. The doctor found that Stephens was “at the low end of the borderline range” intellectually. When Stephens was 15, a psychologist recommended he be taken out of public school and enrolled in a special school for children with emotional problems. The psychologist noted that Stephens had “only a tenuous grasp on reality” and was “unable [to] differentiate reality from fantasy decisively.” Although the doctors suggested that Stephens might have greater mental abilities than shown by the test scores, he dropped out of the special school in the ninth grade in about 1982 after repeating two grades and failing many classes. He did not complete any further education.
Stephens testified that he attempted to work between 1988 and 1986, but failed, and the Social Security records show that he earned no money. Between 1986 and 1989, Stephens managed to hold on to three minimum-wage jobs for only limited periods before being fired from each. For parts of 1986 and 1987, he worked at Har-ston Hall Nursing Home, mopping floors, folding towels, and carrying bags of laundry up and down the stairs. He was closely supervised and given reduced responsibilities, but even so he missed many days of work, was often sent home early, and was ultimately fired. During 1987 and 1988, he worked at a parking garage as a janitor and errand runner. Again, he was closely supervised and often missed work. He was fired after stealing $400 that he had been told to deposit at a bank. In 1989, he worked briefly at a Days Inn hotel. There, in addition to being closely supervised, he was given about a third of the workload of other employees. Nevertheless, he often missed work and was eventually fired.
After being fired from the Days Inn, Stephens was homeless. According to his Social Security records he made about eleven work attempts between 1990 and 1997, but his tenure at each job was short lived, and his earnings were inconsequential. He has received Social Security disability benefits since 1995.
The critical issue in the case is the significance of Stephens’s earnings prior to his application for RRA benefits. The Board majority viewed these earnings as dispositive of the issue of continuous disability. In doing so, the Board committed legal error. The regulations, particularly when read in the light of our case law, are not so rigid.
The regulations provide, at best, a presumption that one who earns more than the prescribed amount per month has been gainfully employed. They provide that, as a “guide,” monthly earnings averages over a certain amount will “ordinarily show that the claimant has engaged in substantial gainful activity.” 20 C.F.R. § 220.143 (emphasis added). For the years 1980-1989, the average earnings amount that would trigger the presumption is $300 per month. Id. The regulation’s plain language forecloses the Board’s interpretation of it to deem Stephens’s earnings dispositive. This reading of the regulation, therefore, is not entitled to deference under Auer v. Robbins, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997).
The regulations focus on the amount of earnings that would presumptively, but not conclusively, establish gainful activity when the claimant received them. The case law therefore requires the Board to consider not only the amount an applicant *590 has earned, but also the context in which those earnings were received. The Board did not do so here. It ignored our precedent holding that temporary, unsuccessful attempts at employment do not foreclose a disability claim.
Our circuit’s leading case is Estes v. Railroad Retirement Board 776 F.2d 1436 (9th Cir.1985). The issue was whether the applicant’s multiple sclerosis caused her to be disabled before she was 22. Looking to the nature of her disease, a progressively disabling condition with periods of remission, we held that work accomplished during a period of remission was not substantial gainful activity that would disqualify her from benefits, id. at 1439, even though, as the dissent noted, she earned more than the regulations’ presumptive amount, see id. at 1440 (Wiggins, C.J., dissenting). The majority in Estes relied on a Sixth Circuit decision, Parish v. Califano, 642 F.2d 188 (6th Cir.1981), that also held that temporary employment was not sufficient to defeat a disability claim.
The facts in Estes were similar to this case in that Estes was not able successfully to perform the work she did attempt, and a supervisor had to reduce her work load. We said “[t]he fact that a disabled multiple sclerosis victim was employed during a remission period, especially where the victim’s performance was inadequate, does not establish substantial gainful employment.” Estes, 776 F.2d at 1439. Short periods of temporary employment, inadequately performed, thus do not constitute substantial gainful employment that would disqualify a claimant for benefits.
Our decision in Estes also relied upon a leading Fifth Circuit case, Goodwin v. Railroad Retirement Board, 546 F.2d 1169 (5th Cir.1977), in which a claimant managed to work for six years, but his shortcomings and need for assistance from others caused the court to hold that the employment was not substantial gainful activity that would prevent his eligibility for benefits. The Fifth Circuit rejected the Board’s contention that a period of employment automatically disqualified the petitioner for benefits, reasoning that “the evidence taken as a whole clearly shows the petitioner’s lack of fitness for substantial regular employment.” Id. at 1171. The court held that, despite his period of employment, “petitioner’s disability began before age 22 and he is disabled today,” and concluded that “[i]t would be carrying the statute to an absurdity to deny him his benefits because of his short periods of temporary improvement.” Id. at 1172. Here the claimant never experienced even short periods of temporary improvement.
The RRA has borrowed many of its concepts from Social Security law, and so cases decided under that statute can be instructive. Estes, 776 F.2d at 1438. Our court confronted a situation similar to Stephens’s in Gatliff v. Commissioner of the Social Security Administration, 172 F.3d 690 (9th Cir.1999). We characterized the issue as whether “a string of sequential, short-term jobs constitute ‘substantial gainful activity.’ ” Id. at 691. Concluding that it could not, we stated that “substantial employment cannot be pieced together from a collection of insubstantial attempts.” Id. That holding applies here. The point is reinforced by Byington v. Chater, 76 F.3d 246, 251 (9th Cir.1996), where an applicant was denied benefits because his employment during the relevant period had been so successful that he had received a promotion. The dissent’s reliance on Byington is therefore inappropriate.
The medical evidence provides no support for the Board’s denial. .There is no medical evidence showing that Stephens is able to work. Stephens’s treating physician states that Stephens’s mental disabili *591 ties prevent him from working. His education and work history demonstrate this has been the case ever since he was a teenager.
The Social Security Act “is remedial and its humanitarian aims necessitate that it be construed broadly and applied liberally.” Adams v. Weinberger, 521 F.2d 656, 659 (2d Cir.1975). This court has held that a disability may be continuous under the Social Security Act even if it is punctuated by unsuccessful attempts to work. In such a case, the petitioner’s attempts “demonstrate not his ability, but his inability to engage in substantial gainful activity.” Gatlijf, 172 F.3d at 694 (quoting Wilson v. Richardson, 455 F.2d 304, 307 (4th Cir.1972)). So too, when considering the RRA’s requirement of continuous disability, we must look to the history of the petitioner’s disability and the petitioner’s success or lack thereof in sustaining meaningful employment. Despite periods of unsuccessful employment, so long as the claimant satisfies all the other requirements of the Act, as Stephens undisputedly does here, the claimant is entitled to benefits.
The decision of the Board is REVERSED and the matter REMANDED for further proceedings consistent with this opinion.