Sczepanski v. Saul

# United States Court of Appeals
## for the Second Circuit

———————

AUGUST TERM, 2019

(Argued: November 25, 2019      Decided: January 7, 2020)

Docket No. 19-185

———————

BRITTANY N. SCZEPANSKI,

*Plaintiff-Appellant,*

—v.—

ANDREW SAUL, Commissioner of Social Security,

*Defendant-Appellee.*[1]

———————

Before: KATZMANN, *Chief Judge*, CALABRESI and LOHIER, *Circuit Judges.*

———————

Plaintiff-appellant Brittany N. Sczepanski appeals from a judgment of the United States District Court for the Western District of New York (Schroeder, *M.J.*), affirming the Commissioner of Social Security's denial of her application for Supplemental Security Income. On appeal, Sczepanski argues that the administrative law judge who reviewed her claim, and whose decision the Commissioner adopted, erred in assuming that Sczepanski's ability to complete a

———————————

[1] The Clerk of Court is respectfully directed to amend the caption as set forth above.

probationary period was irrelevant to her ability to perform significant numbers of jobs in the national economy. We agree, and we **VACATE** the district court's judgment with instructions to **REMAND** the matter to the Commissioner for further development of the evidence.

———————————

TIMOTHY HILLER, Law Offices of Kenneth Hiller, PLLC, Amherst, NY, *for Plaintiff-Appellant*.

PETER W. JEWETT, Special Assistant U.S. Attorney (Ellen E. Sovern, Acting Regional Chief Counsel—Region II, Office of the General Counsel, Social Security Administration, *on the brief*), *for* James P. Kennedy, Jr., United States Attorney, Western District of New York, Buffalo, NY, *for Defendant-Appellee*.

———————————

KATZMANN, *Chief Judge*:

This case calls upon us to determine whether, in the context of consideration of an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, the ability to complete a probationary period is relevant to a claimant's disability status.

Plaintiff-appellant Brittany N. Sczepanski challenges the Social Security Commissioner's denial of her application for SSI. An administrative law judge ("ALJ") determined that Sczepanski was not disabled after finding that she could perform significant numbers of jobs in the national economy, and a federal district court affirmed that decision. On appeal, Sczepanski argues that the ALJ erred

because it assumed that Sczepanski's inability to complete a probationary period at the identified jobs was irrelevant to the ALJ's disability determination. We agree, and we therefore **VACATE** the district court's judgment affirming the Commissioner's denial of Sczepanski's application. However, because the Commissioner should be given the opportunity to show that Sczepanski can perform significant numbers of jobs in the national economy, we instruct the district court to **REMAND** the matter to the Commissioner for further development of the evidence.

## BACKGROUND

On February 27, 2013, Sczepanski filed an application for SSI under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*[2] In her application, Sczepanski stated that she had been disabled since March 1, 2009. After Sczepanski's claim was initially denied, she requested a hearing before an ALJ. The hearing was held on March 13, 2015, and Sczepanski was represented by a non-attorney.[3] Sczepanski

---

[2] Sczepanski and the Commissioner both characterize February 27, 2013 as Sczepanski's application date. Sczepanski scheduled an appointment with the Social Security Administration on that date, and the Administration completed her application on March 22, 2013.

[3] Although the hearing transcript refers to Sczepanski's representative as an attorney, the appointment of representative form indicates otherwise.

testified that she suffered from social anxiety and depression, and that her symptoms were exacerbated by social interaction and stress. In addition, Sczepanski testified that she suffered from selective mutism and auditory processing problems, and that she was unable to concentrate in environments with background noise.

A vocational expert also testified at the hearing. The ALJ asked the expert whether there would be any jobs available to a hypothetical person of Sczepanski's age, education, and work experience who had no exertional limitations and who "should have essentially no contact with the general public and no more than occasional contact with supervisors or co-workers, no fast paced or assembly line or high quota work and no significant noise at the work place." Certified Administrative Record 53 ("CAR"). The expert responded that the hypothetical individual would be able to work as a laundry laborer, of which there were 419,840 jobs in the national economy, an industrial cleaner, of which there were 2,097,380 jobs in the national economy, and a shirt folder, of which there were 426,670 jobs in the national economy.

Sczepanski's representative also questioned the vocational expert. The representative asked how much absenteeism was typically tolerated at a

sedentary, unskilled, entry-level job, and the expert responded, "[n]o more than two days per month every single month." *Id.* at 59. Sczepanski's representative also asked how much absenteeism or tardiness was typically tolerated during a probationary period, and the expert responded, "[d]uring the probationary period of 90 to 120 days there is typically no tolerance for absence." *Id.* at 58. Regarding this latter point, the ALJ interjected to say, "we don't really look at probationary issues. We just, the job, doing the job." *Id.* The ALJ then reiterated that "probationary time doesn't really make any difference in the determination of disability under our regulations." *Id.* And when Sczepanski's representative responded that "it does go to ability to sustain employment if [Sczepanski] can't make it through a probationary period," the ALJ responded:

> I actually don't see that. The question is whether or not they can do a job. If they can't do it they can't do it. If they can do it but can't do it for a continuous period of time, say, 90 days or 180 days then they can't do it but if they can do the job then probationary period, I don't see makes any difference.

*Id.* at 59 (quotation reproduced verbatim from hearing transcript).

On May 26, 2015, the ALJ issued a decision denying Sczepanski's application. The ALJ's decision followed the Social Security Administration's five-step sequential evaluation process for determining whether an adult is disabled.

*See* 20 C.F.R. § 416.920(a). As relevant here, the ALJ found that Sczepanski suffered from severe impairments of anxiety, depression, and selective mutism. The ALJ also found that Sczepanski:

> ha[d] the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Sczepanski] can have no contact with the general public; no more than occasional contact with coworkers or supervisors; no fast-paced or assembly line or other high quota work; no more than mild exposure to loud noises; and, [Sczepanski] should be able to miss up to one day of work per month.

CAR 19–20**.** Notwithstanding these limitations—which mirrored the hypothetical posed to the vocational expert, except with the added limitation that Sczepanski be able to miss up to one day of work per month—the ALJ found that Sczepanski was not disabled because there were significant numbers of jobs in the national economy that she could perform. Specifically, the ALJ explained that the vocational expert at the hearing had testified that someone of Sczepanski's "age, education, work experience, and residual functional capacity," *id.* at 27, could perform the jobs of laundry laborer, industrial cleaner, and shirt folder. Based on the availability of these jobs, the ALJ concluded that Sczepanski was not disabled within the meaning of the Social Security Act. The ALJ did not mention probationary periods in its written decision.

Sczepanski sought review of the ALJ's decision, and the Appeals Council denied the request on December 2, 2016. Sczepanski then challenged the decision in a civil action filed on February 2, 2017 in the Western District of New York. Sczepanski moved for judgment on the pleadings on August 17, 2017, arguing, inter alia, that her "need to miss one day of work per month during the probationary period, coupled with vocational expert testimony stating that employers at unskilled positions have no tolerance for absences[,] directed a finding of disability." *Sczepanski v. Berryhill*, No. 17-CV-100(HKS) (W.D.N.Y. Aug. 17, 2017), ECF No. 12-1, at 13. The Commissioner cross-moved for judgment on the pleadings on December 29, 2017, arguing that "probationary periods are not relevant under the Social Security Act and Regulations." *Sczepanski v. Berryhill*, No. 17-CV-100(HKS) (W.D.N.Y. Dec. 29, 2017), ECF No. 14-1, at 7.

On January 15, 2019, the district court denied Sczepanski's motion and granted the Commissioner's cross-motion. As relevant here, the court reasoned that Sczepanski's disability status depended on whether "jobs would accommodate [her residual functional capacity] and vocational qualifications only," not on "[o]utside factors such as probationary periods for an individual employer, the existence of a specific vacancy, or whether [Sczepanski] would be

7

hired." *Sczepanski v. Colvin*, No. 17-CV-100(HKS), 2019 WL 210842, at *3 (W.D.N.Y. Jan. 15, 2019). Because Sczepanski could perform work as a laundry laborer, industrial cleaner, and shirt folder, the court held that the ALJ's decision was supported by substantial evidence. *Id.* at *1, *3.

The district court entered judgment on January 17, 2019, and Sczepanski timely appealed.

## DISCUSSION

### I. Standard of Review

"When deciding an appeal from a denial of disability benefits, we focus on the administrative ruling rather than the district court's opinion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).[4] "On appeal, we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Id.* "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

---

[4] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

**II. Whether an Applicant's Ability to Complete a Probationary Period Is Relevant to Her Disability Status**

For purposes of SSI eligibility under Title XVI of the Social Security Act, a claimant is considered disabled if she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant's impairment must prevent her from engaging in "substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work." *Id.* § 1382c(a)(3)(B). Moreover, a claimant is not disabled if her "residual functional capacity and vocational abilities make it possible for [her] to do work which exists in the national economy, but [she] remain[s] unemployed because of . . . [her] inability to get work," or because of "[t]he hiring practices of employers," or because the claimant "would not actually be hired to do work [she] could otherwise do." 20 C.F.R. § 416.966(c)(1), (3), (7).

To determine whether a claimant is disabled, the Social Security Administration has prescribed a "five-step sequential evaluation process," *id.* § 416.920(a)(4), pursuant to which the Commissioner considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at steps one through four. At Step Five, the burden shifts to the Commissioner to show there is other work that the claimant can perform." *Id.*

As noted above, the ALJ found that Sczepanski suffered from severe impairments of anxiety, depression, and selective mutism. The ALJ also determined that Sczepanski's residual functional capacity included a limitation that she "should be able to miss up to one day of work per month." CAR 20. The ALJ nevertheless concluded, based on the vocational expert's testimony, that there

10

remained significant numbers of jobs available to Sczepanski as a laundry laborer, industrial cleaner, and shirt folder.[5]

On appeal, we are asked to consider only whether the ability to complete a probationary period is relevant to a claimant's ability to perform significant numbers of jobs in the national economy at step five. Sczepanski argues that she cannot perform the jobs identified by the vocational expert given the expert's testimony that employers typically have no tolerance for absences during probationary periods. The Commissioner responds that probationary periods are irrelevant to disability determinations because probationary periods "relate to an employer's hiring practices," Appellee's Br. 26, and claimants are not disabled if they can otherwise perform work but "remain unemployed because of . . . hiring practices," 20 C.F.R. § 416.966(c)(3). We disagree with the Commissioner, and we accordingly vacate the district court's judgment affirming the denial of Sczepanski's application.

---

[5] Regarding the other steps in the sequential evaluation process, the ALJ found that Sczepanski was not currently engaged in substantial gainful activity, that her impairments did not meet or equal the severity of those in the Listing of Impairments, and that she had no past relevant work.

11

It appears that no court of appeals has addressed whether the ability to complete a probationary period is relevant to a claimant's disability status. Multiple district courts have passed on the question, however, and nearly all have answered it in the affirmative.[6] This widespread agreement makes sense, as a

[6] *See, e.g.*, *Mosher v. Saul*, No. 5:18cv109/EMT, 2019 WL 3779995, at *6 (N.D. Fla. Aug. 12, 2019) ("It thus appears that Plaintiff cannot perform the representative occupations identified by the [vocational expert] because she would not be able to maintain employment during the probationary period(s) for these occupations, due to the requirement in her [residual functional capacity (RFC)] that she miss one day of work per month."); *McLaughlin v. Comm'r of Soc. Sec.*, No. 3:17-cv-424, 2019 WL 125761, at *3 (S.D. Ohio Jan. 8, 2019) ("[A] person with Plaintiff's RFC would be unable to complete the probationary period. . . . [B]ecause an individual with Plaintiff's RFC could not perform jobs that exist in the national economy, the record adequately establishes Plaintiff's entitlement to benefits."), *report and recommendation adopted*, 2019 WL 1902749 (S.D. Ohio Apr. 29, 2019); *Ricker v. Berryhill*, No. 3:16-CV-00121-JAJ-CFB, 2018 WL 4520225, at *1 (S.D. Iowa Mar. 5, 2018) (holding that substantial evidence did not support the ALJ's determination that the claimant could perform a significant number of jobs in the national economy where a "vocational expert . . . testified that employers would tolerate no more than two unscheduled breaks per week, no more than one absence per month, and no absences in the probationary period," and the ALJ failed to address whether the claimant's need to attend medical appointments would cause her to incur more absences than employers would permit); *Merritt v. Comm'r of Soc. Sec.*, No. 6:16-cv-00244-CL, 2017 WL 4570296, at *8 (D. Or. Oct. 12, 2017) ("[T]he Commissioner's own vocational expert testified that being away from the workstation for up to an hour in addition to normal breaks would prevent Plaintiff from passing a probationary period at a new job, even if the work was highly skilled. This would eliminate her ability to perform past work and also any alternative work."); *Shelton v. Colvin*, No. 1:14-cv-01920-SEB-TAB, 2015 WL 13739358, at *3 (S.D. Ind. Oct. 13, 2015) ("These jobs require a worker to go through a probationary period during which he must have more than brief, superficial

probationary period is generally just the first phase of a job, after an employee has been hired, but before she has attained permanent employee status.[7] The ability to complete a probationary period is thus tantamount to the ability to keep a job, and as multiple circuits have recognized, the ability to keep a job is a necessary prerequisite to the ability to engage in substantial gainful activity.[8]

_____

interaction with supervisors and co-workers. Yet, according to the ALJ, Shelton is not able to do that. . . . This dichotomy compels the conclusion that Shelton will be unable to get through the required probationary period at each of the jobs used to deny his claim.").

[7] *See, e.g.*, Mark A. Rothstein et al., Employment Law § 1:2 (Westlaw 2019) ("Many private and public sector employees must successfully complete a probationary period before becoming a permanent employee."); Paul H. Tobias, Litigating Wrongful Discharge Claims § 7:3 (Westlaw 2019) ("The term 'probationary' employee ordinarily refers to a newly hired employee in his or her initial period of employment. During this time, the company may not provide all the rights and privileges of regular employees.").

[8] *See, e.g.*, *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999) ("We are persuaded by the reasoning of our sister circuits that substantial gainful activity means more than merely the ability to find a job and physically perform it; it also requires the ability to hold the job for a significant period of time."); *Dix v. Sullivan*, 900 F.2d 135, 138 (8th Cir. 1990) ("A condition that does not allow a person to work on a regular basis precludes substantial gainful activity."); *Pagan v. Bowen*, 862 F.2d 340, 350 (D.C. Cir. 1988) ("The critical question is not whether the claimant has been stable enough to work for short periods, but whether he or she is able to *hold* whatever job he finds for a significant period of time."); *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986) ("A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain

13

We are not persuaded by the Commissioner's arguments to the contrary. First, the Commissioner argues that substantial evidence supports the ALJ's disability finding because "the ALJ presented a hypothetical question to the vocational expert that mirrored the undisputed residual functional capacity for a range of work at all exertional levels and Sczepanski's vocational profile," and the expert identified three types of jobs that Sczepanski could perform, and based on this testimony, the ALJ "determined that there was work in significant numbers in the national economy that Sczepanski could perform." Appellee's Br. 16–17. But the ALJ's hypothetical to the vocational expert—unlike the ALJ's ultimate determination of Sczepanski's residual functional capacity—did not include the key limitation that Sczepanski be able to miss up to one day of work per month.

Second, the Commissioner cites case law and legislative history for the proposition that "impediments to working that do not reflect an inability to perform the functional demands of a job are simply not considered" in disability determinations. *Id.* at 31. But this argument begs the question whether Sczepanski's inability to complete a probationary period renders her incapable of

_____

jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time."); *see also Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) (same).

14

performing the functional demands of a job. Moreover, the sources that the Commissioner cites are inapposite. For example, the Commissioner points to the Fifth Circuit's decision in *Cornett v. Astrue*, 261 F. App'x 644 (5th Cir. 2008), for the proposition that a claimant's "criminal history [is] irrelevant to the determination of disability even though such history would preclude [the claimant] from working at the jobs found by the ALJ." Appellee's Br. 30. But a claimant's criminal history, unlike Sczepanski's need to miss up to one day of work per month, is not part of her residual functional capacity. The Commissioner also relies on an array of district court decisions that held that claimants were not disabled simply because they were unable to obtain work. But unlike the claimants in these cases, Sczepanski does not argue that she is unable to obtain work. Instead, Sczepanski argues that she would be unable to keep a job after being hired because of her inability to complete the probationary period.

Likewise, the Commissioner's reliance on legislative history is misplaced. The Commissioner cites to the House and Senate Reports on the Social Security Amendments of 1967, which amended the Social Security Act's definition of "disability" to clarify that a claimant's impairments must prevent him from engaging in "substantial gainful work which exists in the national economy,

15

*regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.*" Pub. L. No. 90-248, § 158, 81 Stat. 821, 868 (1968) (emphasis added). As the Reports explain, the amendment was intended to overrule judicial decisions that had expanded the definition of "disability" to encompass not only whether a claimant could perform work, but also "whether there is a reasonably firm basis for thinking that this particular claimant can obtain a job within a reasonably circumscribed labor market." H.R. Rep. No. 90-544, at 29 (1967); S. Rep. No. 90-744, at 48 (1967). According to the Reports, this judicially expanded definition improperly "put the burden of proof on the Government to identify jobs for which the [claimant] might have a reasonable opportunity to be hired, rather than ascertaining whether jobs exist in the economy which he can do." *Id.* By narrowing the definition, Congress sought to "reemphasize the predominant importance of medical factors in the disability determination," and "provide a definition of disability which can be applied with uniformity and consistency throughout the Nation, without regard to where a particular individual may reside, to local hiring practices or employer preferences, or to the state of the local or national economy." H.R. Rep. No. 90-544, at 30; S. Rep. No. 90-744, at 48–49.

For substantially the same reasons discussed above, this legislative history does not suggest that probationary periods are irrelevant to disability determinations. Unlike the claimants in the decisions cited by the House and Senate Reports, Sczepanski does not contend that local employer practices have deprived her of a reasonable opportunity to be hired. Moreover, she is not challenging the Commissioner to prove that she can obtain a job within a reasonably circumscribed labor market—a burden that would understandably be onerous given the diverse labor dynamics that exist throughout the country. Instead, Sczepanski is asking the Commissioner to identify, at the national level, jobs that she can perform. And she is arguing, based on the ALJ's residual functional capacity determination, that she can perform only those jobs that permit her to miss up to one day of work per month (whether during the probationary period or otherwise). As such, her position is fully consistent with the text and history of the Social Security Act.

The Commissioner tries to resist this conclusion by arguing that probationary periods can qualify as "hiring practices" even though they occur after an employee has been hired. The Commissioner argues, for example, that Social Security regulations preclude a finding of disability if "a claimant is able to

17

do work, but remains unemployed due to . . . technological changes in the industry in which she has worked, and cyclical economic conditions[,] . . . situations [that] implicate the time period before and after the potential first day on the job." Appellee's Br. 29; *see* 20 C.F.R. § 416.966(c)(4)–(5). And the Commissioner contends that "the cases that Congress sought to overturn through [the 1967 Amendments] were concerned with issues of real or perceived absenteeism, as well as other issues, such as insurance costs or medical examinations, that would occur after an employee would be hired." Appellee's Br. 33. Again, however, we think the Commissioner misses the mark, as the cited regulations and legislative history concern the inability to *obtain* work, whereas Sczepanski's argument rests on her failure to *perform* work after being hired.[9] If Sczepanski had argued that employers would refuse to hire her out of fear that she could not complete a probationary period, when in fact she could, then the Commissioner's position would have merit. But that is not what Sczepanski has argued.

---

[9] The subsection of the regulation cited by the Commissioner is even titled "Inability to obtain work." 20 C.F.R. § 416.966(c).

Finally, the Commissioner makes several additional arguments that were not raised before the district court. Accordingly, these arguments have been forfeited. Although we have the discretion to consider forfeited arguments "where necessary to avoid a manifest injustice, the circumstances normally do not militate in favor of an exercise of discretion to address new arguments on appeal where those arguments were available to the parties below and they proffer no reason for their failure to raise the arguments below." *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) (per curiam); *see United States v. Olano*, 507 U.S. 725, 733 (1993). The Commissioner has given no reason for its failure to raise these arguments below, and we therefore decline to consider them.

## III. The Appropriate Remedy

Because the ALJ erred in assuming that Sczepanski's ability to complete a probationary period was irrelevant to her disability status, we vacate the district court's judgment affirming the denial of Sczepanski's application. We will not accept Sczepanski's invitation, however, to remand solely for the calculation of benefits. Such a remedy is appropriate where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999).

19

In the instant case, the Commissioner should be given the opportunity to show on remand that there are significant numbers of jobs in the national economy that Sczepanski can perform. As noted above, the vocational expert at Sczepanski's hearing identified nearly 3 million jobs available to a hypothetical person of Sczepanski's age, education, and work experience who had no exertional limitations and who "should have essentially no contact with the general public and no more than occasional contact with supervisors or co-workers, no fast paced or assembly line or high quota work and no significant noise at the work place." CAR 53. This hypothetical mirrored the ALJ's ultimate determination of Sczepanski's residual functional capacity in all relevant respects except that the hypothetical did not include a limitation regarding the ability "to miss up to one day of work per month." *Id.* at 20. If the Commissioner can show on remand that even a fraction of the 3 million jobs identified by the vocational expert do not have probationary periods (or permit absences during their probationary periods), then the Commissioner may be able to show that there are significant numbers of jobs in the national economy that Sczepanski can perform. The appropriate remedy is therefore to remand to the Commissioner for further development of the evidence. *See Rosa*, 168 F.3d at 82–83.

## CONCLUSION

For the reasons above, we **VACATE** the district court's judgment with instructions to **REMAND** the matter to the Commissioner for further development of the evidence.